UNITED STATES, Appellee

v

LARRY W. WOOD, Sergeant, U. S. Air Force, Appellant

18 USCMA 291, 40 CMR 3

No. 21,496

May 2, 1969

*Captain John T. Dorman* argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph E. Krysakowski*.

*Major Robert W. Vayda* argued the cause for Appellee, United States. With him on the brief was *Colonel James R. Thorn*.

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial convicted the accused of three specifications of taking indecent liberties with three boys in the Boy Scout troop of which he was scoutmaster. The maximum punishment extended to a dishonorable discharge and confinement at hard labor for twenty-one years, but the court-martial adjudged a sentence which included a dishonorable discharge and confinement at hard labor for three years. The accused contends he was prejudiced as to the sentence by improper argument of trial counsel.

Before considering the specifics of the allegation of error, it is appropriate to note that no objection was made to any of the remarks now viewed as constituting, in the aggregate, a denial of due process. We are not inclined to penalize an accused for flagrant oversights or neglects of his counsel at trial (United States v Boberg, 17 USCMA 401, 38 CMR 199), but defense has some obligation to object to argument regarded as an appeal to passion or deemed unsupported by the evidence. Timely objection can result in timely correction of improper argument, and appropriate instructions can, in many instances, purge all possibility of harm. See United States v Long, 17 USCMA 323, 38 CMR 121. The absence of objection tends to indicate that the defense did not regard the prosecutor's argument as egregiously improper and is a persuasive inducement to an appellate court to evaluate the prosecutor's argument in the same light as the defense probably considered it at the trial. United States v Johnson, 3 USCMA 447, 454, 13 CMR 3; United States v Stevenson, 34 CMR 655, 659; United States v Lawson, 337 F2d 800 (CA 3d Cir) (1964), certiorari denied, 380 US 919, 13 L Ed 2d 804, 85 S Ct 913 (1965).

The accused's first objection to trial counsel's argument was presented to the board of review. The attack centered on two points, both of which were rejected. On this appeal, the assignment of error has been expanded to six separate objections.

Appellate defense counsel charge trial counsel with gross misrepresentation of the import of two of a group of Airman Performance Reports admitted in evidence for the defense. Trial counsel invited the court members to "[l]ook" at the reports and "get a true picture of him as an airman, 'below average,' 'below standard.'" In his own argument, defense counsel disputed trial counsel's description of the reports as reflecting "sub-standard" performance and called attention to the fact that both reports recommended the accused "for Air Force career."

One of the reports describes the accused as possessing "an excellent working knowledge" of his duty responsibilities and indicates that he discharged his duties "in a quick and efficient manner"; he was placed in the second highest of the ten groups in the separate categories of Accomplishment and Performance of Duties. Referring to other areas of accused's conduct, the report observed that at various times the accused "seemed to have no regard for his appearance," but there was "marked improvement" during the rating period and the deficiency had not "affected" the accused's duty performance. In the category titled "Bearing and Behavior," which required consideration of standards of dress and the extent to which the rated individual "enhances the image of the Air Force Airman," the rating official placed the accused in the fourth lowest of the

**293**

ten groups listed in the category. The indorsing official concurred in the ratings. The second report observed that the accused's work was "often of high quality," but there was inconsistency, in that if the accused did not "like some particular task," he did not perform in accordance with his capabilities. Both the reporting and indorsing officials rated the accused in the seventh highest of the ten groups in Accomplishment and sixth highest of the ten groups in Bearing and Behavior.

In support of the claim of misrepresentation, appellate defense counsel have marshalled an array of cases condemnatory of the prosecuting attorney who suppresses material evidence favorable to the accused or knowingly presents false evidence unfavorable to the accused. See Brady v Maryland, 373 US 83, 10 L Ed 2d 215, 83 S Ct 1194 (1963); United States v Beatty, 10 USCMA 311, 27 CMR 385. The difficulty with the defense contention is not with the law, but with the simple fact that trial counsel's conduct did not fall within the ambit of these cases.

Trial counsel did not hide the reports from the court members or misrepresent their contents. ▇▇▇▇ ▉ On the contrary, he expressly invited the court members to read the reports. His argument reflects merely a conclusion as to the meaning of the various ratings. Thus, he referred to the reports as presenting a "true picture" of the accused. That picture could be discerned only from the composite of the remarks and ratings by the rating officials. The Government concedes that the picture visualized by trial counsel was "exaggerated." We can go further and agree with appellate defense counsel that it is difficult if not impossible to read the reports as depicting the accused as a below average airman, especially if all the reports are considered together, but it is equally difficult to construe the argument as a misrepresentation of material facts to the accused's prejudice. When the reports were received in evi-

dence, the law officer indicated they would "be with the court" when the court members went into closed session for deliberation on the sentence. There is no specific note by the reporter to indicate the reports were actually turned over to the court members, but the enjoinder by both trial counsel and defense counsel that the court members "look" at the reports supports the conclusion that the law officer's ruling was carried out. We have no doubt that the court members determined the import of the performance reports according to their own reading of them, rather than trial counsel's. United States v Lawson, supra, at page 807.

At the beginning of his argument, trial counsel asked a series of rhetorical questions, one of which was, "[w]ould you want this man living . . . on the German economy in a U. S. uniform?" Before the board of review, the accused contended the question improperly intimated that relations between the United States and West Germany should play a part in the sentence. See United States v Brennan, 10 USCMA 109, 27 CMR 183; United States v Cook, 11 USCMA 99, 102, 28 CMR 323. The learned board of review evaluated the remark in the context of the entire argument and concluded it amounted to no more than an exhortation by trial counsel to the court members to impose confinement to keep the accused "in an environment where he could [not] again prey on innocent children." ▇▇▇▇ ▉ Although appellate defense counsel have not undertaken to refute the correctness of the board of review's contextual construction, we are willing to assume that the question does have the implication suggested by the accused. That assumption would ordinarily require reconsideration of the sentence, but reconsideration has already been accorded the accused on this basis. The board of review pointed out that, while it found no error in trial counsel's argument to compel reassessment of the sentence, it had "nonetheless, independently re-

evaluated the accused's punishment in light" of its discussion of the assigned errors and on the basis of "the entire record." We are satisfied that, under the circumstances of this case, the board of review's action "eliminated any possible adverse impact of trial counsel's remarks" on this point. United States v Weaver, 13 USCMA 147, 149, 32 CMR 147.

Further complaint is made about certain of trial counsel's comments regarding the accused's relationship to the Boy Scouts. The defense had introduced substantial evidence to indicate that the accused had done an exceedingly commendable job as a scoutmaster and had been several times commended by Scout officials. However, one defense witness testified that the accused's connection with an "incident such as this" would bar him from further participation "in Scouting." Trial counsel referred to this testimony, and suggested to the court members that they bar the accused from further service in the Air Force. His remarks are as follows:

"The question now turns to what you must do. . . .

". . . First, you must decide whether or not you want this man in the Air Force. The Boy Scouts of American [sic] have already decided they don't want him. Do you want him in the Air Force? The government submits that you do not."

The board of review considered trial counsel's remarks as representing fair comment. We agree. The defense had presented the accused's services to the Boy Scout organization as mitigating evidence. Trial counsel was entitled to argue that, since these services would not suffice to retain the accused in the Boy Scout movement, they should not influence the court members to retain him in the Air Force. United States v Hutton, 14 USCMA 366, 34 CMR 146; United States v Johnson, 12 USCMA 602, 31 CMR 188.

In part of his argument, trial counsel spoke briefly about the general problem of the prevalence of crime. He introduced his remarks with this statement: "I know that you read the paper and listen to our public figures, and you know that the No. 1 domestic problem facing our country today is crime." Then, he reviewed various reasons that have been advanced to account for the problem. Appellate defense counsel contend these comments are unsupported by evidence and represent an "intemperate appeal for punishment based on matters" not in evidence and not "commonly known within the community." The Government maintains that the court members were undoubtedly well aware of the existence and primacy of the crime problem, so the remarks are manifestly innocuous. While this trial took place in West Germany, we tend to agree with the Government that the American military community in that country would, as a matter of contemporary history, be aware of the crime problem in the United States. United States v Long, supra, at page 327. The relevance of that information to this case is another matter. Such notice as may be allowed by contemporary history hardly supports the conclusion that the crime problem in the continental United States is comparable to, or inclusive of, the crime problem in the American military community in West Germany. Be that as it may, we are unable to construe this part of the argument as an appeal to the court members to adjudge a more severe sentence than they would otherwise impose, in the interest of alleviating, or at least not contributing to, the problem. We think it was an allowable preface to trial counsel's appeal for "responsible justice" and "an appropriate sentence."

Trial counsel presented five factors for the court members to consider in determining the sentence. The fourth of these was "rehabilitation." In a series of rhetorical questions, trial counsel suggested that the Air Force provided a disciplinary barracks and "professional treatment" for rehabilitation. He urged the court members to impose a period of confinement

"long enough for both the punitive and rehabilitative measures to be effective." At trial, defense counsel argued that the accused's "best chance" for rehabilitation was "in society," not in confinement, but he did not, as we have previously noted, object to trial counsel's remarks as impermissible argument. On this appeal, appellate defense counsel contend the prosecutor's comments were objectionable as an appeal for a severe sentence in reliance upon the mitigating action of superior authority (see United States v Stevenson, 34 CMR 655, petition denied, 15 USCMA 670, 35 CMR 478), and as implying that the accused suffered from a mental disorder which required "professional treatment." Our reading of the questions does not leave us with the same misgivings. We are certain members of the Air Force know that the service provides confinement facilities for persons sentenced to confinement by court-martial. Whether we may go further and also assume common knowledge that these confinement facilities provide "professional treatment" for the purpose of rehabilitation need not detain us. In our opinion, these references by ■ trial counsel do not suggest the accused suffered from any sort of disability, and that he ought to be confined for a longer period than would otherwise be deemed appropriate in order to provide leeway for clemency action by superior authority.

Appellate defense counsel's final contention is that trial counsel equated "the victims to the sons of the court members" and thereby inflamed the court members against the accused.[1] The argument is based upon several remarks, as follows:

". . . Would you want Sergeant Wood to have access to other young boys, your friends' sons, or your own sons? . . . [I]f you can't administer justice to Sergeant Wood in the same manner as you would want justice administered to Sergeant Wood had it been your son, you are denying . . . [the victims] the protection of the law. . . . You are saying, 'If it happened to my child, he needs to be punished, but since it is their children, forget it.' What would you have done had it been your child?"

Government counsel construe the remarks as no more than a comment on the "gravity of the offenses." This answer misconceives the problem. Had a court member been the father of one of the victims, he would manifestly be disqualified to sit in judgment of the accused. Manual for Courts-Martial, United States, 1951, paragraph 62f, page 92; United States v Gordon, 1 USCMA 255, 2 CMR 161. Consequently, to ask a court member to place himself in the position of a near relative wronged by the accused is to invite him to cast aside the objective impartiality demanded of him as a court member and judge the issue from the perspective of personal interest. United States v Begley, 38 CMR 488 (August 9, 1967); 50 CJS, Juries, § 218b(2), page 957. Trial counsel's remarks, therefore, were patently wrong, and the law officer should have instructed the court members to disregard them.

One further comment by trial counsel merits mention. Trial counsel began his argument with a ■ series of questions. He followed these with this statement: "If you answer any of these questions with a 'no,' and you vote for retention or for not confining this man, you are selfish, self-centered, and are not fulfilling your responsibility to your society or the Air Force." The jury system has come a long way from the time when jurors could be insulted or threatened with personal disadvantage because they reached a result contrary to that regarded as correct by the Government, in the person of the judge or prose-

---

[1] A similar contention was made in United States v Boberg, 17 USCMA 401, 405, 38 CMR 199, but other improprieties in trial counsel's argument made it unnecessary for the Court to discuss the matter.

cuting attorney. Court-martial members are the military equivalent of jurors. They, as much as their civilian counterparts, cannot be scolded or scourged because they act in a way that does not conform to the preconceptions of the prosecutor. Trial counsel may properly ask for a severe sentence, but he cannot threaten the court members with the specter of contempt or ostracism if they reject his request. In our opinion, the remarks made here exceeded the bounds of fair comment.

Not all improper argument by trial counsel is ground for reversal. United States v Lawson, ■ supra; Mellor v United ■ States, 160 F2d 757 (CA8th Cir)(1947), certiorari denied, 331 US 848, 91 L Ed 1858, 67 S Ct 1734 (1947). If the record leaves us with the conviction that the improprieties in the argument did not influence the court members, there is no justification for reversal. The most serious impropriety in the argument before us is trial counsel's appeal to the court members to imagine that their sons were the victims of the accused's offenses. If the record contained nothing more on the subject, reversal might be appropriate. See Adams v State, 192 So 2d 762 (Fla) (1966). The subject, however, was considered during the challenge proceedings at the beginning of the trial. Four of the court members and the law officer indicated they had children in the Scout movement. All represented they could and would remain impartial in discharging their respective responsibilities in the case. Responses to other questions by the other court members reflect similar representations of impartiality. Since the issue was fully ventilated during the challenge procedure, and defense counsel indicated satisfaction with the law officer and the court members, we are convinced that trial counsel's remarks did not have the impact they might otherwise have had. The rela-

tive leniency of the sentence adjudged by the court provides affirmative evidence of the validity of our conviction. As we pointed out earlier in this opinion, the accused was liable to confinement at hard labor for twenty-one years, but the court-martial sentenced him to three years.[2] Evaluating trial counsel's argument as a whole, and considering it in the light of the entire record, we are satisfied that the improprieties in the argument were not prejudicial to the accused.

The decision of the board of review is affirmed.

Judge DARDEN concurs.

FERGUSON, Judge (dissenting):

I dissent.

I cannot agree that trial counsel's argument on sentence, which the majority concede was patently erroneous in several particulars, did not prejudice this accused.

The accused was convicted of indecent liberties with boys under sixteen years of age, admittedly most distasteful offenses; however, the nature of the offenses was no excuse for trial counsel's most intemperate argument. As the Supreme Court stated in Berger v United States, 295 US 78, 88, 79 L Ed 1314, 55 S Ct 629 (1935):

". . . while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

While my brothers, in their opinion, have quoted significant portions of the argument, I believe it should be set forth in full in order to place the issue in proper perspective.

"TC: . . . May it please the court, wouldn't it embitter you for the Air Force to permit a sex pervert to live in our highly selective and interdependent, inter-related

---

[2] After trial, four of the court members recommended that the accused be assigned to a retraining group, with the view toward possible restoration to duty; three of these court members had sons in the Scouts.

society? Would you want Sergeant Wood to have access to other young boys, your friends' sons, or your own sons? Would you want this man living in your stairwell, or someone else's stairwell, or on the German economy in a U. S. uniform? If you answer any of these questions with a 'no,' and you vote for retention or for not confining this man, you are selfish, self-centered, and are not fulfilling your responsibility to your society or the Air Force. Why? Because if you can't administer justice to Sergeant Wood in the same manner as you would want justice administered to Sergeant Wood had it been your son, you are denying Mark . . . , Bill . . . , and John . . . the protection of the law. You have told the parents they cannot take the law into their own hands. You have said, 'As members of society, we will protect all of our children.' If when their parents comply with the law and you do not, not only has a twenty-four year old man made victims of Mark, John, and Bill, but society has made the entire families victims because they have abided by our laws. You are saying, 'If it happened to my child, he needs to be punished, but since it is their children, forget it.' What would you have done had it been your child? Would you have done the right thing as . . . [parents] did and allowed the authorities to take this through proper judicial processes, or would you have taken the law into your own hands?

"I know that you read the paper and listen to our public figures, and you know that the No. 1 domestic problem facing our country today is crime. Most say it is a complete disregard for law and order. In other words, they say, 'Because all rights are mine and all limitations are placed on you.' Still others say it is because our courts won't administer justice. They say that in most instances the victims suffer much more severely and have far less protection than the offenders. Some say that 'I don't have enough

guts to look Sergeant Wood in the face and to say, "You wronged Mark . . . , you wronged Billy . . . , you wronged John . . . , you wronged my society, and you wronged me, and for all that you must be punished." '

"No one likes to spank a child. No one likes to censure a teen-ager, and no one likes to send a grown man to jail. However, having the courage to do what must be done is the quality which separates the responsible from the irresponsible. The . . . [parents] have exhibited their sense of responsiblity, and trial counsel assures you that a father and mother having eleven, twelve and thirteen year old boys don't like to hear from their son and from others the vile truths of which this man has been convicted here today. Can you imagine the restraint imposed upon these people? Can you imagine the restraint which they endure facing what has happened and abiding by our laws. They are sentenced to what has happened.

"The question now turns to what you must do. Sure, we would all like to be benevolent and forgiving, but, gentlemen, we are not God, and too often, too often irresponsible action is masked in the guise of mercy.

"Gentlemen, you have taken oaths as officers and members of this court to act as the stalwarts of society in this case. You must deliver responsible justice. Understand that what you must do is to determine and announce an appropriate sentence. It is imperative that you understand that the term 'sentence' includes more than punishment. It includes discharge or retention, morale and discipline of the troops —yes, retribution, rehabilitation, and punishment. First, you must decide whether or not you want this man in the Air Force. The Boy Scouts of American [sic] have already decided they don't want him. Do you want him in the Air Force?

The government submits that you do not.

"Look at the man's performance reports, particularly the one dated 15 November 1966 and the one dated 9 June 1965, and you will get a true picture of him as an airman, 'below average,' 'below standard.' We know what the Boy Scouts of America think of him. Now you are going to tell us what the United States Air Force thinks of what he has done.

"The sentence of the court should include a discharge and the type of discharge should characterize the type of conduct of which he has been convicted—dishonorable. Second, you must consider the morale and discipline of the troops. If this man is not confined, he is back on the job Monday morning. It is just as simple as that. He has been convicted of three heinous offenses. The law officer is going to tell you in a minute this man could be confined for twenty-one years for what he has done and, if you don't confine him, he goes right back to the job Monday morning with that blue suit on.

"Thirdly, you must consider retribution; it is the basis for all criminal action. Sergeant Wood must recompense Mark, John and Billy for what he did to them and for what he did to society. It is the old cliche, 'Let the punishment fit the crime.' Is this a serious crime or not? Is this the type of crime that society can tolerate, or not? Is this the type of crime which is morally offensive? What is the nature of this crime? What is the 'who' and the 'what'? The 'who' are three young boys who do not know —possibly they do now; not at that point of time, and the law assumes until they are sixteen they do not know what they were doing is wrong. This man enticed them because of his position. That is the reason they did it. The 'what' is the indecent liberties taken by this twenty-four year old man because of their incompetence. And, finally, the ex-

tent and far reaching effects of this crime that these boys must live with, and both their present families and their future families.

"Fourthly, there should be rehabilitation. Don't you think this is what the Air Force pays for in their disciplinary barracks and confinement facilities? Don't you know that the Air Force is concerned that these people are provided with professional treatment?

"Finally, society demands that this man be punished. The only effective punishment that this court can adjudge is confinement at hard labor. It is the only thing that has any meaning. His freedom of movement must be curtailed. He must be removed from society for a long enough period to impress upon him what he has done and that society and the Air Force will not tolerate, under any circumstances, this conduct. The period should be long enough for both the punitive and rehabilitative measures to be effective."

This Court has repeatedly declared that it is essential to a fair trial that trial counsel's argument be restricted to the evidence and the reasonable inferences therefrom. United States v Day, 2 USCMA 416, 9 CMR 46; United States v Doctor, 7 USCMA 126, 21 CMR 252; United States v Olson, 7 USCMA 242, 22 CMR 32; United States v King, 12 USCMA 71, 30 CMR 71; United States v Johnson, 12 USCMA 602, 31 CMR 188; United States v Gerlach, 16 USCMA 383, 37 CMR 3; United States v Long, 17 USCMA 323, 38 CMR 121. As the Court said in Long, at page 327:

"An appeal to passion or prejudice is wholly improper. Viereck v United States, 318 US 236, 87 L Ed 734, 63 S Ct 561 (1943)."

Long was convicted of lifting a weapon against his commanding officer and of assault upon a superior noncommissioned officer. In his argument on sentence, trial counsel urged the court-martial to impose the maximum sentence. Thereafter, he argued that Long's actions indicated he had

adopted an attitude, allegedly prevalent throughout the country, that " 'I will tell the military to go to hell when I get there, and spend my time in Leavenworth' "; that such an attitude included a preference for prison to duty in Vietnam. The majority, in *Long*, while conceding that trial counsel's argument did not constitute fair argument on that accused's motivation in committing the offenses, found no prejudice in view of the law officer's instructions to the court to disregard trial counsel's comments.

I disagreed in *Long* because I believed that the effect of such an erroneous argument was incalculable and the cure was not to be found in a simple instruction by the law officer to disregard any such comments.

In the case at bar, we are without even a simple instruction to disregard, which might have lessened the impact of what can only be classified as an argument well-calculated to inflame the passion and prejudice of the court members. At the outset, trial counsel, using the medium of rhetorical questions, categorized the accused as a "sex pervert" who should not be allowed "to live in our highly selective and interdependent and inter-related society." If he remains, trial counsel in effect asserted, he will "have access to other young boys, your friends' sons, or your own sons," raising thereby the specter of future crimes of a similar nature. His contention that the accused should not be allowed to stay in Germany in a United States uniform, was followed by an astounding castigation of the court members as "selfish, self-centered," and as "not fulfilling your responsibility to your society or the Air Force," in the event they thereafter voted to retain the accused in the service or to not confine him. He explained this view by contending that such a vote would be a failure to administer justice—"the protection of the law"—in the same manner as they would want justice administered in the event the victims had been their own sons.

Apparently in the belief that this was not enough of an appeal to passion, trial counsel then resurrected the ghost of vigilantism by asking the members to consider whether, in the event the victims had been their children, they would have deferred to the judicial processes for protection "or would you have taken the law into your own hands?" He reiterated this theme when he added: "Can you imagine the restraint imposed upon these people? Can you imagine the restraint which they endure facing what has happened and abiding by our laws?"

At this point in my analysis of counsel's argument, I believe a few comments are in order.

It is error for counsel to base his argument on appeals to prejudice irrelevant to the case and outside the proof. 53 Am Jur, Trial, XVIII, Argument And Conduct Of Counsel, § 495, page 400 (cases cited at footnote 2). In United States v Sprengel, 103 F 2d 876 (CA3d Cir)(1939), comments by counsel for the Government concerning what might constitute further conduct of the appellants in the event they were acquitted, were held prejudicial error. There, the court said, at page 884:

". . . The appellants were on trial for crimes which they committed, not for a course of future conduct."

This Court has had occasion in the past to decide the effect of remarks by trial counsel with reference to relations between the military and civilian community. In United States v Cook, 11 USCMA 99, 103, 28 CMR 323, we said:

". . . [A]n appeal to a court-martial to predicate its verdict upon the probable effect of its action on relations between the military and the civilian community *pose(s) theories which are not supported by testimony* and which operate as a one-way street against the accused.' United States v Mamaluy, 10 USCMA 102, 27 CMR 176." [Emphasis supplied.]

In Adams v State, 192 So 2d 762 (Fla)(1966), the court found preju-

dicial error when the prosecutor, in closing argument, asked the jury to consider how they would feel if the victim had been their wife or daughter. The Texas Court of Criminal Appeals reversed a conviction for rape where the District Attorney argued that if the accused were turned loose, he might rape one of your wives, sisters, or daughters, and if they voted for an acquittal, people could not be blamed for taking the law into their own hands. Hemphill v State, 72 Tex Crim 638, 165 SW 462 (1913), 51 LRA (NS) 914. See also Annotation: Appeals To Prejudice, 78 ALR 1438, 1471–1473.

In Goff v Commonwealth, 241 Ky 428, 44 SW2d 306, the court held that, "It is never proper to admonish a jury that, if it does not convict, the members of the jury violate the oath which they have taken. Wallace v Com, 229 Ky 776, 18 SW(2d) 290." *Ibid.*, at page 308. The court also held that it was improper for the attorney for the Commonwealth, "To state or contend that a verdict other than that sought by the attorney making the argument will subject the jury to scorn or contempt. 2 RCL p. 416, § 14." *Ibid.*, at page 309.

As stated in 53 Am Jur, supra, § 465, page 371:

". . . But while a prosecuting attorney may warn the jury to perform their duty, he may not indulge in argument calculated to arouse in them fears of public disapproval, or of being recreant in their duty, and which on that account tends to coerce them into a verdict of conviction."

In part of his argument, trial counsel referred to the general problem of the prevalence of crime. The accuracy of his statement that "you know [from reading the papers and listening to public figures] that the No. 1 domestic problem facing our country today is crime," might be debatable. Be that as it may, as my brothers hold, such notice as may be allowed by contemporary history hardly supports the conclusion that the

crime problem in the continental United States is comparable to, or inclusive of, the crime problem in the American military community in West Germany, where the accused was tried. They believe, however, that this was an allowable preface to trial counsel's appeal for responsible justice and an appropriate sentence.

I do not agree. Counsel's argument was totally irrelevant to the situation at hand. By coupling his remark with the statement that "others say . . . [crime is the No. 1 domestic problem] because our courts won't administer justice," he blatantly implied that the court would lend credence and even proof to this view if it did not render a decision comporting with his desire. His further statement that, "They say that in most instances the victims suffer much more severely and have far less protection than the offenders," is an additional example of his disregard for the relevance of a matter not in evidence. I am not unaware that such incorrect statements about the courts have been made, but it is my recollection that the speakers were referring more often to appellate than trial courts. I am reasonably certain that my brothers would take high umbrage were such an argument propounded by counsel in our Court.

In People v Moore, 26 App Div 2d 902, 274 NYS2d 518, 519, the court declared:

". . . The District Attorney also exceeded proper limits in telling the jury that if they wanted to live in a community where crime runs rampant they should acquit the defendant. (People v Fielding, 158 NY 542, 546, 551, 553, 53 NE 497, 498, 499, 500, 46 LRA 641; People v Maurilla, 189 App Div 809, 179 NYS 290, aff'd 229 NY 600, 129 NE 924; Annotation 85 ALR2d 1132)."

It is the general rule that a claim of prejudicial error may be based upon a prosecuting attorney's argument to the effect that the people of a city, community, or county want or expect a conviction. Annotation: Argument To Jury—Public Opinion, § 2, 85 ALR

2d 1132, 1134. This rule is subject to exception where the record supports evidence of guilt or where the jury has been instructed to disregard the argument. Annotation, supra, §§ 3 and 4. The fact that we here deal with question of sentence, and not guilt or innocence, does not change the impact of the argument or the reason for the rule, the courts "generally stating that the 'remark' is a fact not in evidence and therefore a departure from the record." *Ibid.*, at page 1135. There was no instruction to disregard in this case and in my view the impact of the argument far outweighs other evidence relative to the sentence.

In their summation, my brothers find the most serious impropriety was trial counsel's appeal to the court members to imagine that their sons were the victims of the accused's offenses. As they acknowledge, had a court member been the father of one of the victims, he would manifestly be disqualified to sit in judgment of the accused. Manual for Courts-Martial, United States, 1951, paragraph 62*f*, page 92; United States v Gordon, 1 USCMA 255, 2 CMR 161. To ask a court member to place himself in the position of a near relative wronged by the accused is to invite him to cast aside the objective impartiality demanded of him as juror and to judge the issue from the perspective of personal interest. 50 CJS, Juries, § 218b (2), page 957; Adams v State, supra. The majority do not find this error prejudicial on the ground that the mat-ter was ventilated during the challenge proceedings at the beginning of trial, when four of the members and the law officer indicated that while they had children in the Scout movement they could still remain impartial in discharging their respective responsibilities.

I do not think that sufficiently covers the issue. While they might rightly express impartiality in exercising their judgment on the basis of the preliminary questions asked, the test propounded by trial counsel in his argument on sentence was based on a hypothetical situation which would have personally involved the court members in the controversy. As this Court said in United States v Gordon, supra, at page 262:

". . . [A]n accused is entitled to have . . . the limits of his sentence fixed by one who is free from any connection with the controversy."

While I find other portions of trial counsel's argument improper, I do not believe it necessary to comment further. In my view, his arguments, based as they were on totally extraneous considerations and made for the obvious purpose of arousing the emotions, passions, and prejudices of the court, were prejudicial to the substantial rights of this accused. See cases cited above.

I would reverse the decision of the board of review and order a rehearing on sentence.