**UNITED STATES**

v.

**Sergeant Michael F. DAVIC, FR 219–58– 8900 United States Air Force Regional Hospital Shaw Twelfth Air Force (TAC).**

**ACM S24354.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 24 Nov. 1975.

Decided 18 May 1976.

Appellant Counsel for the Accused: Colonel Jerry E. Conner and Major Byron D. Baur. Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain Alvin E. Schlechter.

Before ROBERTS, Senior Judge, and ORSER and SANDERS, JJ.

## DECISION

ROBERTS, Senior Judge:

Tried by a special court-martial in which findings were made and sentence imposed by a military jury, the accused stands convicted, contrary to his pleas of not guilty, of three specifications alleging the possession, transfer, and sale of amphetamines contrary to the provisions of Air Force Regulation 30–2 and possession of hashish in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 934.

The approved sentence is a bad conduct discharge, confinement at hard labor for six months, forfeiture of $240.00 per month for six months, and reduction to airman basic.

Although appellate defense counsel initially submitted this case to the Court without any specific errors being assigned, it is now claimed in supplemental pleadings, the filing of which we have approved, that we should order a rehearing on the sentence imposed below because of the holdings of the Court of Military Appeals in *United States v. Mosely*, 1 M.J. 350, and *United States v. Miller*, 1 M.J. 357, which were decided on 19 March 1976. It is urged that those cases compel the conclusion that the trial counsel erred by stating in argument that the jury should consider the extent to which a sentence imposed by them would serve to deter others from committing offenses similar to those of the accused.

We do not believe that *Mosely* and *Miller* require that a lawfully imposed sentence must be set aside merely because a trial counsel makes reference to the concept of general deterrence as one of the factors to be taken into account in arriving at an *appropriate* sentence. In our view, the thrust of *Mosely* and *Miller* is to condemn the use by trial counsel of the concept of general deterrence as an aggravating circumstance justifying additional penalties which allow "the accused to be punished more severely than he justly deserves." *United States v. Mosely, supra*, 1 M.J. 352. In *Miller*, the rule is expressed that trial counsel may not argue "as to deterrence of others by imposition of a more severe sentence upon the accused than might otherwise be adjudged." *United States v. Miller, supra*, 1 M.J. page 358.

We do not believe that in these decisions the Court discarded the notion that one of the functions of the sentence imposed for criminal misconduct is to deter future criminal activity. Neither do we believe that the Court held that *any* reference whatever in argument as to the deterrent effect of punishment is improper. That conclusion is simply contrary to the legal precedents gen-

erally accepted in every jurisdiction in this country. It is inconceivable that the Court would make so drastic a departure from commonly accepted legal principles without specifically stating that a new rule of law was being promulgated. That holding would be contrary to many of the Court's prior decisions. Yet a careful reading of the opinions in *Mosely* and *Miller* does not reveal the slightest suggestion that a new principle is being formulated; and, certainly, none of the Court's former decisions in this area are distinguished or overruled.

■ Trial counsel, as the representative of one of the parties to the court-martial, is unquestionably entitled to present strong and vigorous argument in favor of a stern but appropriate punishment, so long as his argument is fair and is based reasonably upon the evidence before the court-martial or facts which may be reasonably inferred therefrom. *United States v. Olson*, 7 U.S.C. M.A. 242, 22 C.M.R. 32 (1956), *United States v. Roman*, 45 C.M.R. 492 (A.F.C.M.R.1972); *United States v. Johnson*, 1 M.J. 73 (1975). It has been traditionally and consistently held by the Courts of Military Review of each of the armed forces and their predecessor Boards of Review that in argument for an appropriate sentence, the trial counsel may properly urge that general deterrence of criminal activity by others may be considered. *United States v. Weller*, 18 C.M.R. 473 (A.F.B.R.1954); *United States v. Jackson*, 35 C.M.R. 883 (A.F.B.R.1965); *United States v. Martin*, 39 C.M.R. 621 (A.B.R.1968); *United States v. Harper*, 49 C.M.R. 795 (A.C.M.R.1975), pet. denied (28 June 1975); *United States v. DeMinicis*, 47 C.M.R. 574 (N.C.M.R.1973); *United States v. Poteet*, 50 C.M.R. 73 (N.C.M.R.1975), pet. denied (5 May 1975), *United States v. Bradley*, 50 C.M.R. 608 (N.C.M.R.1975), pet. denied (20 June 1975). In *Bradley*, Judge Chadwick, speaking on behalf of the Navy Court of Military Review said:

It is now well established that deterrence is a sentencing consideration that may appropriately be commented upon by the trial counsel in his sentencing argument.

And the Army Court of Military Review in *Harper, supra,* opined that it "approaches fatuity [to claim] that it is error for trial counsel to argue that deterrence of others is a proper consideration in sentencing." 49 C.M.R. at 795. So well established has this principle been, that we regularly see arguments making reference to deterrence in roughly half of the records of trial reviewed by us. The service Courts of Military Review did not, of course, independently arrive at the conclusion that reference to general deterrence in argument by trial counsel was appropriate; rather those opinions were based, for the most part, on precedents established by the Court of Military Appeals.

In *United States v. Cummins*, 9 U.S.C. M.A. 669, 26 C.M.R. 449 (1958), the Court of Military Appeals specifically approved a trial counsel's argument that "it was the duty of the court to adjudge a sentence which would be appropriate in the light of three purposes: (1) to teach the accused to obey the law; (2) *to warn others against disobeying the law*; (3) to remove the accused from society 'until he is fit again to rejoin it.'" 26 C.M.R. at page 455. (Emphasis added.) Many years later in *United States v. Wood*, 18 U.S.C.M.A. 291, 40 C.M.R. 3 (1969), Judge Quinn, speaking on behalf of the Court, opined that an argument that "'the No. 1 domestic problem facing our country today is crime'" was "an allowable preface to trial counsel's appeal for 'responsible justice' and 'an appropriate sentence.'" 40 C.M.R. at page 7.

In fact, the only two relevant cases which are cited in the Court's opinion in *Mosely, supra, United States v. Mamaluy*, 10 U.S.C. M.A. 102, 27 C.M.R. 176 (1959) and *United States v. Hill*, 21 U.S.C.M.A. 203, 44 C.M.R. 257 (1972), each allude to the permissibility of using the concept of general deterrence as a part of the sentencing process. In *Mamaluy*, Judge Latimer noted the Court's holding in *United States v. Cummins, supra,* and observed that it was "legitimate argument" to mention general deterrence. In *United States v. Hill*, Judge Quinn, speak-

ing on behalf of the Court in a case that dealt not with trial counsel's argument but rather with the sentencing remarks of a military judge sitting alone, said:

> We have no hesitancy as to the legal correctness of the trial judge's remarks that the 'problem of heroin . . . must be dealt with . . . [among others] by the court who [must] endeavor to deter others from engaging in conduct similar to' that to which the accused had pleaded guilty.

44 C.M.R. at page 260.

The notion of general deterrence as a permissible consideration in determining an appropriate sentence is not peculiar to the military justice system. The above precedents are nothing more than a reflection of the jurisprudence of every civilian jurisdiction. Although it has frequently been questioned whether it is entirely proper for a prosecutor to make specific recommendations as to an appropriate sentence when arguing in a forum in which the sentence is fixed by a judge (see ABA Standards, The Prosecution Function, Section 641), it is universally acknowledged that one of the functions of the prosecutor, in his argument, is to inform the jury of the various factors to be considered in arriving at a sentence. See the authorities cited in *United States v. Olson, supra,* and *United States v. Weller, supra.* Reflective of the general acceptability of the principle that deterrence of others may be urged by a prosecutor upon a jury considering appropriate sentence, it is said in a leading legal encyclopedia:

> Where, in a criminal prosecution, the law imposes upon the jury the duty of determining the penalty, it is entirely proper for counsel to discuss the question of punishment. It is proper for the prosecution to appeal to the jury to assess as a crime deterrent, a more severe punishment than the statutory minimum.

75 Am.Jur.2d, Trial, Section 229.

The significance of general deterrence, was of course, discussed at length by the nine Justices in the landmark capital punishment case of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and while the Justices were mixed in their opinion as to the effectiveness of the death penalty as a deterrent, they uniformly agreed that sanctions actually imposed by courts do in fact serve to deter crime. As noted by Mr. Justice Stewart in *Paul v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974):

> An important function of the corrections system is the deterrence of crime. The premise is that by confining criminal offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they and others will be deterred from committing additional criminal offenses.

417 U.S. at page 822, 94 S.Ct. at page 2804.

In the report by the President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society, we read:

> There is no decision in the criminal process that is as complicated and difficult as the one made by the sentencing judge. A sentence prescribes punishment, but it also should be the foundation of an attempt to rehabilitate the offender, to ensure that he does not endanger the community, and to deter others from similar crimes in the future.

The general acceptability of deterrence as one of the factors to be considered in the sentencing process is further shown in a very recent scholarly law review article, The Future of Sentencing Reform, 73 Michigan Law Review 1361 (1975):

> In reality, the sentence imposed in any individual case will be the product of a variety of considerations, only one of which is the desire to rehabilitate or "treat" the offender. A partial list of these other factors would include: (1) the need to protect society, (2) the need to deter the individual defendant and other potential defendants generally, (3) the need (or desire) to 'denounce' the violation of important social norms, (4) the need to reward the defendant who pleads guilty for his cooperation with the prosecution, (5) the inclination to punish the

defendant if the judge is particularly revulsed by his actions or character, and (6) the need to maintain some degree of equality between the sentences imposed upon higher and lower income criminals.

It is also significant that we read in the report of the Conference of Federal District Court Judges, conducted at the Federal Judicial Center, 1974 (reported at page 520, 64 F.R.D. 475 (1975)), during a seminar on Sentencing the Offender, that:

[t]he place of deterrence as a factor in sentencing was discussed, and several judges thought that this is an inherent consideration. No sentiment was expressed for the philosophy that the *only* consideration is that of the welfare of the defendant.

The difficult and multifaceted problem of arriving at an appropriate punishment was discussed by Judge Frankel, one of the Nation's leading authorities on the sentencing process, in an actual decision by him in *United States v. Braun*, 382 F.Supp. 214, 215 (S.D.N.Y.1974), in which he wrote:

Why, indeed, then, a prison term for the defendant before us? The grounds, for better or worse, may be recalled briefly: First, *general deterrence*, to make good the law's threats in the hope or belief that others will be discouraged from evading their taxes by the force of this example among many others. Second, *denunciation*, the recording of society's outraged disapproval in a case so serious that, in the words of a classic statement, a lesser penalty would "depreciate the seriousness of the defendant's crime." Third, the demands of *equal justice* ; increasingly, the courts recognize that "respectable" or so-called "white-collar" crimes must not be treated with benign understanding while our less privileged (and more driven) criminals serve long terms of imprisonment.

A further persuasive indication that the concept of general deterrence is an appropriate consideration in determining a just sentence is found in the Model Penal Code of the American Law Institute. Section 1.02 of the sentencing provisions of that model act provides that among the general purposes of sentencing are:

(a) to prevent the commission of offenses and

(b) to give fair warning of the nature of the sentences that may be imposed on conviction of an offense.

In the American Bar Association's Standards, Sentencing Alternatives and Procedures, we find the following provisions:

2.2 The sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant.

2.5(c)(123) [a legitimate reason for the selection of total confinement in a given case is:] It would unduly depreciate the seriousness of the offense to impose a sentence other than total confinement.

In the commentary accompanying the approved draft of the standards, it is made explicit that this latter provision takes into account the need for "secondary" deterrence.

In light of the wide acceptance of the utility of and the necessity that consideration be given to general deterrence in the sentence process referred to above, we cannot conclude that in *United States v. Mosely, supra*, and *United States v. Miller*, the Court of Military Appeals prohibited any and all references by trial counsel to deterrence in his argument on the sentence. Rather, we believe that *Mosely* and *Miller* merely echo the sentiment of Judge Quinn, in *United States v. Wood, supra*, that the test is whether:

The argument [is] an appeal to the court members to adjudge *a more severe sentence* than they would otherwise impose, in the interest of alleviating, or at least not contributing to, the problem [of crime]." [Emphasis supplied.)

40 C.M.R. at page 7.

Satisfied as we are, in light of the foregoing authorities and the previous pronouncements of the Court of Military Appeals, that the trial counsel may suggest to a

military jury that deterrence of others is an appropriate consideration in arriving at an *appropriate* sentence, so long as he does not urge the use of deterrence as a basis for imposing a sentence "more severe than might otherwise be adjudged", we turn to the facts of this case and measure trial counsel's argument by that standard.

After findings had been announced by the court, the accused elected to make an unsworn statement in which he referred to his emotionally impoverished background, his initially satisfactory military duty as a medical technician, and the fact that he had become addicted to the use of amphetamines and other drugs while stationed overseas. Clearly as an effort to mitigate the punishment to be imposed by the court, the accused stated that his problems with drug involvement had adversely affected his judgment, but that after his apprehension he became aware of the seriousness of his condition, and had taken positive steps to participate in a drug rehabilitation program. In this latter regard, he virtually conceded that confinement for his offenses would be in order, as it would provide him with the controlled environment he felt necessary to overcome his drug problem. The primary thrust of his plea to the court was that a bad conduct discharge not be adjudged.

In response to the matters raised in the unsworn statement, the trial counsel, in arguing on the sentence, pointed out that Sergeant Davic's condition and drug problems should, of course, be very carefully considered by the court and that in arriving at a sentence, the court should be sensitive to the accused's "own expression of what his problems are, what his family problems are." He went on, however, to point out that the court should also consider the adverse effects of the accused's distribution of drugs at his installation, on military discipline. He emphasized the gravity of the offenses in view of the fact that the accused was a medical technician and should have been well aware of disastrous effects of drugs. He emphasized that above all the court should determine a sentence that would be appropriate for the offenses of

which the accused stood convicted and that the punishment should be appropriate for the individual and fair to him. But he urged, on the other hand, that the military jury should also consider what was fair to the Government. In this connection he noted that, "it's also important to consider the deterrent effect of having this type of offense occur here on Shaw Air Force Base." But then he went on to say:

> Each of you has the unique position here in a court-martial where you have to sit in judgment of a human being, a fellow man. It's not an easy job to take. Certainly, it's probably one of the most responsible jobs that you can ever have, to sit back and from all the things we hear about our own personal liberties, about what our guarantees are of our Government, and to sit back with another human being and look at him and think, I'm going to deprive this man of his civil liberties, I'm going to punish him . . You look at his particular circumstances; you look at the type of misconduct we're involved with here, and the Government would submit that the maximum punishment imposable in this case is an appropriate punishment.

Again emphasizing the charges against the accused were very serious, and that the evidence seemed to indicate that the accused's offenses were thoughtful, planned out, and intentional, the trial counsel alluded to the concept of general deterrence by saying:

> If an individual is considering commission of offenses of this nature, and this is speaking in the area of deterrence, the individual's need to know that sort of conduct is not going to be tolerated. There is no valid explanation for this type of misconduct. This misconduct cannot be condoned; it cannot be taken lightly because it's serious misconduct, and it is for this reason that the Government feels that the maximum punishment imposable in this case should be applied to Sergeant Davic.

■ The general tenor of the trial counsel's argument was that while the military jury should "individualize" a sentence for the accused, many additional factors other than his rehabilitation should be considered by them, including the notion that their sentence would serve as warning to other persons who might be tempted to commit similar offenses. But the principal theme of his argument was that above all else the jury should arrive at an appropriate sentence. He did not suggest that a more severe sentence be imposed merely as a deterrent.

■ It is significant that the trial defense counsel did not object to any portion of the argument made by the trial counsel. While a lack of objection to trial counsel's argument may not necessarily be a waiver of any impropriety therein, it is certainly an indication that, at trial, the comments were not considered to be egregious or prejudicially harmful. *United States v. Wood, supra, United States v. Roman, supra.* It is not surprising that no objection was made, for, in our view, as apparently in the view of trial defense counsel, the argument is fully in keeping with norms of propriety generally accepted.

As to the circumstances of the accused's offenses, and his participation therein, the trial counsel's argument did not extend beyond, "reasonable inferences from evidence in the record, and was not calculated to inflame the passions or prejudices of the jury." See ABA Standards, The Prosecution Function, Sections 5.8(a) and (c). With respect to his references to the effect of general deterrence, not in the record, the comments were nonetheless permissible, as this factor is a matter "of common public knowledge based on ordinary human experience." See ABA Standards, The Prosecution Function, Section 5.9. His use of general deterrence in his argument was not an appeal for a severe punishment for deterrence sake alone, but was rather merely an echo of the provisions of the Model Penal Code, referred to above, that one purpose of a sentence, is, "to give fair warning of the nature of sentences that may be imposed on conviction of an offense." Those provisions are carried over into the American Bar Association Standards, Sentencing Alternatives and Procedures, Section 2.5(c)(iii), that a legitimate reason for selecting the most severe form of punishment discussed therein, total confinement, is that, "it would unduly depreciate the seriousness of the offense to impose" a lesser sentence.

Accordingly, we find no impropriety in trial counsel's argument.

For the reasons stated, the findings of guilty and the sentence are correct in law and fact and are

AFFIRMED.

ORSER and SANDERS, Judges, concur.