## UNITED STATES

v.

**Richard Hugh MOODY, 267 13 0073, Hull Technician First Class (E–6), U. S. Navy**

**NCM 80 2204.**

U. S. Navy Court of Military Review.

Sentence Adjudged 8 April 1980.

Decided 20 March 1981.

LT Thomas P. Murphy, JAGC, USNR, Appellate Defense Counsel.

LT William C. Martucci, USNR, Appellate Government Counsel.

Before BAUM, Senior Judge, and PRICE and EDWARDS, JJ.

EDWARDS, Judge:

Pursuant to his pleas appellant was found guilty of forcible sodomy and commission of an indecent act in violation of Article 125 and Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925, 934, respectively. He was sentenced by a general court-martial consisting of members to confinement at hard labor for 6 months and a bad-conduct discharge. The convening au-

thority approved the sentence but suspended execution of the bad-conduct discharge and confinement in excess of 4 months. Appellant has assigned the following errors:

I

THE APPELLANT'S PLEA OF GUILTY TO CHARGE III, FORCIBLE SODOMY, WAS IMPROVIDENT IN THAT APPELLANT'S TESTIMONY EVIDENCES A POSSIBLE BELIEF ON HIS PART THAT THE VICTIM CONSENTED TO THE ACT.

II

THE TRIAL COUNSEL'S PRESENTENCE ARGUMENT TO THE COURT MEMBERS WAS IMPROPER AND INFLAMMATORY.
    A. THE TRIAL COUNSEL IMPROPERLY SUGGESTED THAT THE COURT MEMBERS TAKE INTO ACCOUNT THE VICTIM'S FAMILY IN DETERMINING AN APPROPRIATE SENTENCE.
    B. THE TRIAL COUNSEL IMPROPERLY ARGUED, FACTS NOT IN EVIDENCE.

III

THE COURT-MARTIAL WAS NOT PROPERLY CONVENED IN THAT THE LOCATION IN WHICH IT WAS CONDUCTED WAS NOT THE LOCATION ESTABLISHED BY THE CONVENING ORDER.

I

Appellant pleaded guilty at trial to forcible sodomy in violation of Article 125, UCMJ, 10 U.S.C. § 925. Now appellant asserts that "[h]is statements reflect a strong possibility that he may have believed the prosecutrix may have consented in some manner." Appellant's Brief at 7.

The following colloquy between the military judge and appellant sets forth the circumstances surrounding the use of the knife in relation to the sodomy offense:

MJ: In pleading guilty to the specification do you admit that the act you engaged in with [prosecutrix] was done by force? Do you understand that?

ACC: Yes, sir, I do.

MJ: Now I asked you earlier if you had led her to believe in any way that you would harm her with this knife if she did not perform this act and you indicated no. Now—then you said something about perhaps she may have thought that I would have harmed her. Is that correct?

ACC: I never threatened her with the knife but I knew—verbally threatened her with a knife.

MJ: Now excuse me. What did you say?

ACC: Verbally. I never told her I was going to do anything to her with the knife but I knew she was scared of the knife and that was the reason why she was having—doing sex with me—having oral sex with me.

MJ: Alright. Why was she afraid of the knife?

ACC: Afraid I might use it against her, to do her bodily harm.

MJ: What were you doing that may have caused her to believe this?

ACC: Nothing really. Just the knife being there and her seeing the knife.

MJ: Where was the knife?

ACC: In my left hand. It was—when I first—when I first picked it up it was in my right hand and I switched it to my left.

MJ: Was that the hand toward her?

ACC: The right was towards her. I picked it up with my right and switched it to my left hand, and then she could—realized she was scared of the knife, she had seen it, and she was scared I was going to use it against her, the reason why she did the sex.

MJ: Do you believe that that's why she had sex with you?

ACC: Yes, sir.

MJ: Because she was afraid that you might harm her with the knife?

ACC: Yes, sir.

MJ: About what you indicated before, you didn't say you—you would harm her with the knife, Is that correct?

ACC: Yes, sir. I never said it.

MJ: But by holding a knife, and by your actions do you believe that she engaged in this act because she was afraid that you might harm her with the knife?

ACC: Yes, sir.

MJ: And so doing, do you admit that this act was done by force?

ACC: Yes, sir.

MJ: Did [prosecutrix] consent to this act?

ACC: No, sir.

MJ: Was this against her consent?

ACC: Yes, sir.

(R. 11 -12).

Appellant now argues that the statements made by him during the providency plea evidence a possible belief on his part that the victim consented to the act. Article 45, UCMJ, 10 U.S.C. § 845, requires a plea of guilty to be in accordance with actual facts. *United States v. Moglia*, 3 M.J. 216, 218 (CMA 1977). If appellant had presented matters inconsistent with a plea of guilty, Article 45, UCMJ, 10 U.S.C. § 845, would require rejection of that plea. The test as to whether the matters presented are inconsistent was set out to be whether there was a substantial indication of direct conflict between the accused's plea and his following statements. *United States v. Logan*, 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973). Appellant's responses make it clear that he believed that the victim was afraid of the knife he held in his left hand, that this fear is why she had sex with him, and that the act was without the consent of the victim. It is immaterial whether appellant brandished the knife in a threatening manner or gesture. From appellant's statements we can see he believed that he had done all that was necessary with the knife to assure the victim's compliance under duress to his wishes. Considering all the surrounding circumstances it is obvious the victim submitted because of a reasonable fear of grievous bodily harm. Appellant's words and actions were subtle but there was no mistaking his intent to engage forcibly in

illicit sexual relations without the consent of the victim.

## II

During the presentencing phase, the trial counsel made the following suggestion to the court members during his closing argument:

Well there is another family involved in this matter, and that is the [prosecutrix's] family. [Prosecutrix] has a husband, a petty officer on the USS EDWARD McDONNELL, as shown in the Appellate Exhibit which has been submitted to the court members. And, certainly, that's one of the families that should be considered in your deliberations on this matter because as the defense counsel stated what has been done cannot be undone.

(R. 62). In addition the trial counsel stated in his closing argument to the court members the following:

I would ask you to ask yourself if this man were not in the Navy and had been convicted of crimes of this magnitude, if he had been convicted of forcible sodomy, if he had been convicted of a lewd and lascivious act, and he was asking to come into the Navy, should he come into the Navy? And the government would suggest that a very simple answer to that question is no.

(R. 63).

Appellant contends that trial counsel committed error by suggesting that court members place themselves in the position of a relative of the victim. *United States v. Wood*, 18 U.S.C.M.A. 291, 296, 40 C.M.R. 3, 8 (1969). As to the second statement appellant argues that trial counsel was implying to the court members that a civilian convicted of forcible sodomy by the civilian criminal justice system would be ineligible to enlist in the Naval service, that no such evidence was presented to the members, and that therefore argument was based upon matters not in the record.

■ We are of the view that trial defense counsel's failure to object to trial counsel's argument at trial waives such error unless we can find "plain error." *United States v. Tanksley*, 7 M.J. 573 (ACMR 1979); *United States v. Cook*, 592 F.2d 877 (5th Cir. 1979). We find trial counsel's argument that another family beside the accused's family was touched by these criminal acts, that is, the victim's family, to be fair comment considering the extensive effort by appellant to shift the effect of the prospective burden of any sentence awarded from him to his family. Further, his question to the Court was not whether appellant "would" have been permitted to enlist if he had been convicted of these crimes in civilian life prior to any effort to enlist, but whether the court members felt whether he "should" be permitted to enlist under those circumstances. We do not view the argument as arguing matters not in evidence as asserted by appellant. Nor do we believe the trial counsel was implying to the court members that there was in existence a regulation which would preclude appellant's enlistment in the Naval service; rather, he was posing a question to the court members to consider whether appellant "should" be retained in the Naval service, a matter which the trial counsel strenuously was arguing should not occur.

■ Notwithstanding the above, a comparison of the sentence awarded by the court with the maximum punishment that was imposable for the offenses committed leads us to the conclusion that appellant was not prejudiced in any manner. *United States v. Lania*, 9 M.J. 100, 105 (CMA 1980).

## III

■ The Uniform Code of Military Justice does not require that convening orders or changes thereto be in writing. Paragraphs 5a(2) and 36b, *Manual for Courts-Martial, 1969 (Rev.)*, (MCM) provide that, in convening courts, convening authorities will utilize the form contained in Appendix 4, MCM, which designates, *inter alia*, the trial locale. Modification of the trial locale by written orders is not covered in the *Manual* as are changes in court composition which may be by oral order, message, or signal and which should be confirmed by

written orders. Paragraph 38*d*, MCM. This is not surprising considering that "the jurisdiction of a court-martial with respect to offenses against military law is not affected by the place where the court sits." Paragraph 8, MCM. The jurisdiction of a court-martial is premised on an authorized convening authority, court membership in accordance with the law, and power derived from Congressional act to try the person and the offense charged. *Id.* The place of trial is not jurisdictional, hence there is no statutory or regulatory requirement that designated changes in locale be in writing. Appellant's cited cases of *United States v. Ware*, 5 M.J. 24 (CMA 1978), and *United States v. Carey*, 23 U.S.C.M.A. 315, 316, 49 C.M.R. 605, 606 (1975), and its progenitors deal with court membership, a jurisdictional prerequisite, and not with court locale, which is normally a matter of administrative convenience.

The findings and sentence as approved on review below are affirmed.

Senior Judge BAUM and Judge PRICE concur.