UNITED STATES, Appellee,

v.

Joseph P. BARTOLETTI, Specialist U.S. Army, Appellant.

No. 64,630.

CM 8902032.

U.S. Court of Military Appeals.

Argued Jan. 9, 1991.

Decided July 10, 1991.

For Appellant: *Captain Deborah C. Olgin* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel Russell S. Estey, Captain Alan M. Boyd* (on brief).

For Appellee: *Captain Joel J. Berner* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Maria C. Fernandez* (on brief); *Captain Clay E. Donnigan.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant was tried by a general court-martial composed of officer members at Fort Campbell, Kentucky, in May and June 1989. Contrary to his pleas, he was found guilty of larceny of personal property and wrongfully damaging personal property, in violation of Articles 121 and 109, Uniform Code of Military Justice, 10 USC §§ 921 and 909, respectively. The members sentenced him to a bad-conduct discharge, confinement for 1 year, total forfeitures, a $500 fine, and reduction to Private E–1. The convening authority approved the sentence. On March 30, 1990, the Court of Military Review affirmed the findings and sentence in a short-form opinion.

We granted review on this issue:

WHETHER THE MILITARY JUDGE ERRED BY DENYING THE DEFENSE OBJECTION TO THE TESTIMONY OF THE CRIME STATISTICS CLERK AS THAT TESTIMONY WAS IN VIOLATION OF RULE FOR COURTS–MARTIAL 1001 AND MILITARY RULE OF EVIDENCE 401.

We hold that RCM 1001(b)(4), Manual for Courts–Martial, United States, 1984, did not authorize admission of prosecution evidence of other larcenies from automobiles within appellant's command at the sentencing portion of his court-martial. However, the cumulative and limited nature of the challenged testimony regarding these other crimes, as well as the judge's general instructions, persuade us that this legal error was harmless. Art. 59(a), UCMJ, 10 USC § 859(a).

Prior to sentencing, the Government offered the testimony of Kimberly Bates–Cobb, a civilian clerk in charge of crime statistics for appellant's command. The record of the side-bar conference which addressed this testimony is as follows:

### SIDE–BAR CONFERENCE

MJ: The record should reflect present are counsel for both sides, the accused, military judge, and the reporter.
Go ahead.

IDC: Your Honor, I have been eluded [sic] that this witness is a statistician. This woman shouldn't testify that there is a problem with larcenies here at Campbell. There's a large number of (*inaudible*) division level to make sure that we don't get into the infamous matters that we had with the introduction of the evidence that [sic] to the charging of larceny.

ATC: Your Honor, (*inaudible*) actually with the (*inaudible*) between the time between 8 July and (inaudible) seriousness (*inaudible*). Yes, this is true (inaudible).

IDC: May I suggest to you that we make a slight (inaudible). It will have to be kept very general.

MJ: Well, at this point I'm ——

IDC: (*Inaudible*).

MJ: I'll overrule that objection. I'll allow the witness to testify concerning numbers are important. It will be up to the members.

IDC: Well, then (*inaudible*).

MJ: This side-bar is terminated.

Ms. Bates–Cobb testified as follows:

MJ: Ms. Cobb, I'm going to ask that you speak loud and clear so that everyone can hear you please.

Q. What is your current occupation here at Fort Campbell?

A. I am the Crime Statistics clerk. I work for the Provost Marshal's Office here at Fort Campbell.

Q. The Crime Statistics clerk?

A. Yes.

Q. For how long have you been the Crime Statistics clerk?

A. Since January 1987.

Q. Do you have knowledge of the number of larcenies from automobiles in parking lots here on Fort Campbell?

A. Yes, I do.

Q. Where did you get this knowledge from?

A. I obtained the information from the Military Police blotters which I received on a daily basis, except for the weekends.

Q. From the period of 1 January 1989 to 1 June 1989, how many larcenies from autos occurred, on Fort Campbell, Kentucky, from parking lots?

A. At least 129 parking lot larcenies?

Q. One—At least 129?

A. Yes.

Q. Could there have been more?

A. Yes, there may have been more.

Q. How can you make a determination that there could have been more?

A. I take the information from the Military Police blotters and enter it into a database. And I have the database searched by code, offense code, and by the location field. And the information that I was looking for were codes hav-

ing to do with larcenies as well as the abbreviation for parking lot.

Q. So how could there have been more than 129 larcenies, parking lot larcenies?

A. Okay. If the larceny occurred in the parking lot and the information concerning that location was more than would fit into my field, then that information would be omitted.

Q. So there is a probability, in your opinion, that there could have been more [sic] 129 parking lot larcenies on Fort Campbell?

A. Yes, during that period of time.

TC: Thank you. I have nothing further, sir.

### CROSS–EXAMINATION

Questions by the defense:

Q. *Ma'am, those statistics are based on military police reports that were given to the Law Enforcement Command; is that correct?*

A. *Yes, it is.*

Q. Some of those 129 include unfounded cases; is that correct?

TC: Objection, Your Honor, it's outside the basis of her personal knowledge.

MJ: I'll overrule that objection. The witness can testify to as whether she knows.

A. Okay. Some of them may have been; however, when I went through the information, I did check to see if they were unfounded.

Q. So right now, you know that there was a large number of larcenies in the parking lots at Fort Campbell, Kentucky?

A. Yes.

IDC: Thank you.

(Emphasis added.)

---

RCM 1001(b)(4) allows the prosecution, during the presentencing phase, to "present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty." Furthermore, evidence in aggravation under this rule may include evidence which shows a "significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense." RCM 1001(b)(4), Discussion.[1]

■ In view of these requirements, several problems exist concerning admission of the challenged evidence. First, the inability of the court reporter to record the entire side-bar conference obscured the basis for which this crime-statistic evidence was offered by the prosecution and eventually admitted by the judge. *See* Mil.R. Evid. 401 and 402, Manual, *supra*.[2] Sec-

---

1. (4) *Evidence in aggravation.* The trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty. Except in capital cases a written or oral deposition taken in accordance with R.C.M. 702 is admissible in aggravation.

Discussion

Evidence in aggravation may include evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused and evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense.

*See also* R.C.M. 1004 concerning aggravating circumstances in capital cases.

2. A post-trial affidavit was submitted by the military judge concerning the side-bar conference. This affidavit does not alleviate our con-

cern as a matter of fact or law. *See* RCM 1104(d)(1), Discussion, Manual for Courts-Martial, United States, 1984.

AFFIDAVIT

SUBJECT: *U.S. v. Bartoletti*

I, ANDREW J. CHWALIBOG, Military Judge, United States Army Legal Services Agency, 1st Judicial Circuit, Fort Campbell, Kentucky, do hereby certify that reference the side bar which occurred concerning the testimony of Kim Bates–Cobb (ROT 290–291) the defense counsel objected to the witness being allowed to testify concerning the number of larcenies from automobiles which occurred at Fort Campbell during the period January—June 1989 on the basis of the fear that the members would sentence the accused for those offenses rather than solely for the offenses he had been found guilty. The trial counsel desired to have the witness testify concerning what was usually taken and therefore about how serious the problem was at Fort Campbell,

ond, even assuming that the other-crimes evidence was relevant to show a repeated command occurrence, there was no foundational showing that these crimes had an adverse impact on the community. Moreover, it cannot reasonably be contended that such an impact "directly and immediately resulted from" the single crime for which appellant was found guilty. *See* Mil. R.Evid. 401 and 402. *Cf. United States v. Needham*, 23 MJ 383, 384 (CMA 1987). Finally, presentation of this raw data to the members created the possibility that appellant's sentence might be aggravated unfairly by the crimes of others. *See* Mil.R. Evid. 403. Accordingly, we hold that admission of the crime-statistics evidence under the circumstances of this case was legal error.

■■■ Other parts of the record, however, show that this error did not substantially prejudice appellant. Art. 59(a). Admittedly, trial counsel argued on this basis that appellant's offense was serious and warranted a substantial punishment as a strong message of condemnation to the community. Yet, despite a maximum permissible sentence of 20 years and trial counsel's argument for no less than 5 years, appellant received only 1 year's confinement. Also, the military judge subsequently gave the standard limiting instruction regarding aggravation evidence:

> Kentucky from July 1988 since this showed that this was a serious problem for the EM stationed at Fort Campbell, and had a bearing on the gravity of this accused's case. I overruled the defense objection and allowed the witness to testify concerning the number of

Although you must give due consideration to all matters in mitigation and extenuation as well as those in aggravation, *you must bear in mind that the accused is to be sentenced only for the offenses of which he has been found guilty.*

(Emphasis added.) We can presume that the members followed the military judge's general instructions with respect to the crime statistics evidence. *United States v. Ricketts*, 1 MJ 78, 82 (CMA 1975). This presumption is especially appropriate when no other instruction was proffered or requested by defense counsel. In addition, Ms. Bates–Cobb's testimony itself was limited to the number of other automobile larcenies that had been reported. There was no exploration of the circumstances of these other larcenies—what was taken, when, and where—minimizing the possibility that the members could have inferred that appellant was responsible for any of those other crimes. Finally, this evidence was largely cumulative of the unobjected-to testimony of Investigator Barrow on findings that quite a few larcenies had occurred in this area. In this context, reversal of the sentence is not required.

The decision of the United States Army Court of Military Review is affirmed.

Judge COX and Senior Judge EVERETT concur.

> reports but not the nature of them. The defense counsel objected.
> [Dated March 6, 1990]