UNITED STATES, Appellee

v

VERNON J. BOBERG, Staff Sergeant, U. S. Army, Appellant

17 USCMA 401, 38 CMR 199

No. 20,495

February 23, 1968

*Captain Stephen Arinson* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Captain Anthony F. Cilluffo,* and *Captain Paul V. Melodia.*

*Captain Joel P. Schiff* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major John F. Webb, Jr.*

### Opinion of the Court

KILDAY, Judge:

Appellant was arraigned before a general court-martial convened at Saigon, Republic of Vietnam, charged with the lifting of a weapon against a superior officer and unpremeditated murder, in violation of Articles 90 and 118, Uniform Code of Military Justice, 10 USC §§ 890 and 918, respectively. He entered a plea of guilty and was found guilty of both charges and specifications thereunder. He was sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for twenty-five years, and reduction to the grade of E-1. The convening authority approved the sentence. A board of review in the office of the Judge Advocate General of the Army affirmed the findings of guilty and the sentence. This Court granted review to consider two issues. In one, we are asked:

Whether the plea of guilty to Charge II (murder) was improvident.

Prosecution evidence has as its source a stipulation of fact introduced as Prosecution Exhibit 1. This document is here shown in its entirety.

"Captain Richard G. Yost and Staff Sergeant (E-6) Vernon J. Boberg, the two American advisors at Duc Lap, Quang Duc Province, Republic of Vietnam spent the morning of Sunday, 26 June 1966, attending church and visiting ham-

lets near the Duc Lap district head-quarters. After lunch, Staff Sergeant Boberg took his M-2 carbine and engaged in target practice on a nearby range. At 1500 hours, SSG Boberg entered a civilian resturant [sic] and consumed four bottles of beer. He returned to the US compound and told Captain Yost that he was going out to look for VC. When Captain Yost tried to stop him from leaving SSG Boberg pointed his carbine at Captain Yost and told him he would shoot him if he tried to stop him. Taking his carbine and three clips of ammunition SSG Boberg ran across a field and entered the door of a hut occupied by a Vietnamese woman and her child. He stood in the doorway and fired his carbine into a nearby tree. Then he began walking down Highway 14. As it was getting dark, SSG Boberg saw a man on a bicycle approaching him. He yelled for the man to stop but his shouts were ignored. SSG Boberg fired his carbine and killed Y-Hit Kbour, a Montagnard who was returning home from work on his bicycle. A few moments later a Vietnamese bus drove up and SSG Boberg got aboard and ordered the driver to take him back to Duc Lap. When the bus arrived in Duc Lap, SSG Boberg got off the bus, ran up to Captain Yost saying, 'Here I am, I just killed a VC'. The Montagnard died while being taken to a hospital in Ban Me Thout of three bullet wounds inflicted by Staff Sergeant Boberg. Staff Sergeant Boberg had no reason to believe that the man he killed was a VC."

The appellant, in turn, testified that he had been assigned to a liaison team as an infantry advisor. Yet, because of continued restrictions imposed by a superior, he had been totally unsuccessful in his many attempts to bring greater effectiveness to the Vietnamese forces with whom he worked. In addition, during this period he received word from his home of his father's illness and the apparent breakdown of his own marital relationship. Frustration piled upon frustration. Finally, after having visited various hamlet chiefs, Sergeant Boberg left, telling Captain Yost:

"I told him I was going out to take initiative, to go out and kill the VC, and the only way he could stop me, was he could kill me or I would kill him. I was just standing around doing nothing, I had to get out to do something."

Certain defense witnesses attested to the Sergeant's superior military proficiency. Still another psychiatrically described the appellant as one who, when a problem arises, "tends to take an active part in solving that problem. He strikes out at it rather than sit back in a passive way and hope it will resolve itself."

Appellate defense counsel now see improvidence of the plea for diverse reasons. On the one hand, prejudice is said to stem from the law officer's failure to make full and meaningful inquiry into the providence of the plea; there being more than just mere inconsistency in the stipulation of fact and mitigating evidence, especially the accused's own testimony.

The same result is reached, according to the defense, when neither the accused nor counsel is aware of the legal effect of honest mistake of fact upon the crime charged, or when the facts show accused laboring under an honest mistake as to the victim's identity.

Accompanying the defense brief are two affidavits. In one, trial defense counsel asserts that he advised the plea of guilty. Believing that unpremeditated murder was a general intent crime requiring no special *mens rea,* he didn't consider honest but mistaken belief a defense even if established by the evidence. He would not have given such advice had he "interpreted the pronouncements of the Court of Military Appeals in accordance with the recent decision in United States v Thomas, No. 19,847, 23 June 1967."

In the second affidavit, Sergeant Boberg attests that he entered the pleas of guilty believing that honest mistake was not available as a defense, that he first shot the victim, firmly believing

**403**

him to be an enemy, knowing that Viet Cong were in the vicinity ·and that a curfew was then in effect. There was no reason the Vietnamese should not have heard the sergeant's shouts to halt. In the dark, the appellant could not tell if the victim was armed. On his return to the compound, the sergeant immediately reported killing a Viet Cong.

Appellate Government counsel reply that the law officer's inquiry into the providence of the plea comported with legal requirements, there being nothing subsequently introduced justifying the defense claim that further inquiry was required or necessary. In like manner, appellant and his counsel are said not to have misunderstood the legal effect of the claim of mistake of fact. Their reliance upon United States v Thomas, 17 USCMA 103, 37 CMR 367, is considered totally misplaced. We agree.

This Court has dotted the past with urgings to law officers of general courts-martial and presidents of special courts-martial to include more than just the barren recital of a *pro forma* explanation as to the meaning and effect of a guilty plea. Cf. United States v Drake, 15 USCMA 375, 35 CMR 347, and cases cited therein. We have done so in the hope of eliminating completely the controversies that arise from time to time in this regard. In particular, it has been our hope to forestall further instances where, as a result of appellant's post-trial avowals of innocence, both boards of review and this Court have been showered with numerous conflicting affidavits purportedly reflecting the true state of events. Cf. United States v Chancelor, 16 USCMA 297, 36 CMR 453.

In furtherance of this desire, we have hastened to add that where there is a proper delineation by the law officer of the elements of the offense charged and thereafter an admission of factual guilt placed on the record, accused's later post-trial protestations of innocence will fall on deaf ears. United States v Chancelor, supra, at page 300. With this preface, we turn to the case at hand.

During the out-of-court hearing that followed accused's plea of guilty, the law officer, by his questions, .found that the accused was satisfied with counsel with whom he had discussed his case, that his plea was a voluntary act, and that he understood the consequences of entering into such a plea. The law officer then proceeded to set out the elements of each offense charged. For unpremeditated murder, these elements were:

"That Y-Hit Kbour, the Vietnamese National is dead.

"That is [sic] death resulted from your act, to wit: Shooting him with an M2 Carbine.

"That the killing of this victim by you was unlawful at the time of the killing you had an intent to kill or inflict great bodily harm."

Thereafter, the accused acknowledged that he understood the nature of these elements having discussed their contents with counsel. So, too, with the stipulation of fact.

The sum of this inquiry satisfies us that under the circumstances of this case the accused has conceded guilt, though a categorical admission is lacking. Clearly, this confrontation is in keeping with our previous demands, going far beyond the formula advice found in Manual for Courts-Martial, United States, 1951, Appendix 8a, page 509, previously condemned. Cf. Manual for Courts-Martial, supra, paragraph 70b(1)–(3); United States v Griffin, 15 USCMA 135, 35 CMR 107; United States v Chancelor, supra.

Contrary to the defense view, we find nothing in the stipulation of fact, or in the appellant's own mitigating testimony, inconsistent with the plea thereby requiring further investigation by the law officer in this area. Appellant's assertions that "he was going out to look for VC," and "'I just killed a VC,'" do not raise a substantial issue as to whether the appellant was laboring under an honest mistake of fact as to the victim's identity as now urged by the defense. The obvious

purpose of including in the stipulation the sentence "Staff Sergeant Boberg had no reason to believe that the man he killed was a VC" was to place the appellant's prior assertions in their true relationship to the crime charged; *i.e.,* to show them meaningless and incontestable. It precluded the possibility that appellant acted under an honest mistake.

Similarly, the intent and purpose of United States v Thomas, supra, is misconceived. There, intent to kill or inflict bodily harm remained a controverted question of fact for the court-martial's determination. We simply emphasized that unpremeditated murder required the intent, specifically, to kill or inflict grievous bodily harm—nothing more. Intent to kill in the case before us has never, at any time, been denied or questioned. The plea of guilty as well as the stipulation clearly show its existence. The very arguments now relied upon leave no room for dispute.

In order to render a plea improvident, it is not enough to find that the stipulation fails to establish guilt. Instead, the evidence must negative appellant's guilt if his plea thereto is to be set aside. United States v Walter, 16 USCMA 30, 36 CMR 186; United States v Thompson, 13 USCMA 395, 32 CMR 395. This record of trial contains no such defect.

With the transcript in this state, with not so much as a clemency interview in discord, we are not now prepared to substitute the appellant's subsequent post-trial protestations of innocence for the court-martial record. United States v Chancelor, supra; cf. United States v Holladay, 16 USCMA 373, 36 CMR 529.

The second issue to be considered concerns the propriety of trial counsel's argument on sentence. Touching first those things favorable to the accused, argument then turned to adverse matters. Objection is now made to trial counsel's charge that appellant's acts "fail to favorably influence the local citizens"; that the victim's "death has caused the US Government embarrassment"; and that here was an "example of the United States Mission being utterly compromised." These declarations, say the defense, prejudicially asked the court to consider the probable effect of their sentencing action on military-civilian community relations and insinuate, as well, that the convening authority or higher authority view life imprisonment and accessory penalties as an appropriate punishment.

Improper appeal to the court is likewise found in trial counsel's claim that if the victim were the brother of court members the latter would believe "life behind bars" proper punishment. Viewed as an appeal to class prejudice are his remarks comparing this to a killing by Viet Cong, thereby calling upon national pride and prejudice of American officers against Viet Cong in evaluating sentence.

Appellate defense counsel further contend that the law officer compounded the prejudice by not instructing the court to disregard the inflammatory portions of the trial counsel's polemics.

Contrarily, counsel for the Government say that the argument upon sentence did not, supported as it is by the record, exceed fair comment. In any event, it is further submitted that waiver is applicable for defense had ample opportunity to object but hesitated to do so. Thus, in the absence of flagrant abuse, curative action should not be permitted on appeal.

Assuredly, trial counsel may, in argument, strike hard and telling blows—if fairly based upon trial-adduced material. Cf. United States v Pendergrass, 17 USCMA 391, 38 CMR 189, and cases cited therein. However, prejudicial error results where:

". . . an appeal to a court-martial to predicate its verdict upon the probable effect of its action on relations between the military and the civilian community 'pose[s] theories which are not supported by testimony and which operate as a one-way street against the accused.' United States v Mamaluy, 10 USCMA

102, 27 CMR 176." [United States v Cook, 11 USCMA 99, 103, 28 CMR 323.]

The absence of an objection, moreover, does not require a different result nor does it matter that the argument relates to sentence rather than findings. United States v Allen, 11 USCMA 539, 29 CMR 355; United States v Weaver, 13 USCMA 147, 32 CMR 147.

Basically, we see little distinction in the argument presented here and that made in United States v ▉ Cook, supra. Both suffer from the fact that undue emphasis is placed upon United States military *vis-a-vis* foreign civilian relationships, in all their aspects.

The factors that brought about reversal of the conviction in *Cook* are equally present here. The consistencies with which these remarks permeate trial counsel's argument establishes the likelihood that the court-martial was improperly swayed. Under these circumstances, we are certain that the substantial rights of the accused on sentencing matters have been adversely affected.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Army for rehearing on the sentence.

Chief Judge QUINN and Judge FERGUSON concur.