UNITED STATES

v.

Ronald E. ERNST, Jr., Seaman Apprentice, U.S. Coast Guard.

CGCMS 23688.
No. 849.

U.S. Coast Guard Court of Military Review.

10 Feb. 1984.

Trial Counsel: LCDR Andrew W. ANDERSON, USCG.

Assistant Trial Counsel: LT William J. PETERSEN, USCGR.

Defense Counsel: LCDR James A. BLOCHER, USCG.

Appellate Defense Counsel: LT Dana J. ST. JAMES, USCGR, LT JOSEPH F. AHERN, USCG, LCDR Robert W. FERGUSON, USCG.

Appellate Government Counsel: LT Christena G. GREEN, USCGR.

DECISION

MORGAN, Chief Judge:

Seaman Apprentice Ronald E. Ernst, Jr., USCG, was tried by a special court-martial comprised of a military judge and members on 18 and 19 February 1982. The accused was charged with a violation of Coast Guard Regulations, conspiracy, larceny, two offenses of accessory after the fact and two offenses of misprison of felony, all arising from the theft of a quantity of seized contraband marijuana on 23 October 1981, in violation of Articles 92, 81, 121, 78 and 134, Uniform Code of Military Justice, 10 U.S.C. 892, 881, 921, 878 and 934. He was also charged with two offenses of unauthorized absence for periods, respectively, of 30 days

and 3 days in violation of Article 86, UCMJ, 10 U.S.C. 886, and with missing the movement of his ship, USCGC COURAGEOUS, through design on one occasion and through neglect on the other, concurrently with the unauthorized absence offenses in violation of Article 87, UCMJ, 10 U.S.C. 887. The accused pleaded guilty to and was convicted of conspiracy to steal and possess marijuana on 23 October 1981 in violation of Article 81, UCMJ, possession of marijuana on 23 October 1981 in violation of Coast Guard Regulations and Article 92; UCMJ, larceny of marijuana on 23 October 1981 in violation of Article 121, UCMJ, the two unauthorized absence offenses in violation of Article 86, UCMJ, and the offense of missing the movement of USCGC COURAGEOUS through design in violation of Article 87, UCMJ. The remaining charges and specifications were withdrawn. The members sentenced the accused to be confined at hard labor for four months, to forfeit $300.00 per month for four months, to be reduced to pay grade E–1 and to be discharged from the service with a bad conduct discharge. The findings of guilty and the sentence were approved by the convening authority, an officer exercising general court-martial jurisdiction.

Appellate defense counsel contend that the accused is entitled to disapproval of the bad conduct discharge because of inordinate post-trial delay in the disposition of his case, that the staff legal officer's review is inadequate in that it failed to consider the disparity between the sentence adjudged in appellant's case and those adjudged in other related cases, and, that the accused was prejudiced as to the sentence by trial counsel's improper argument.

■ In support of his contention that the accused should be sentenced to a substantial period of confinement and a bad conduct discharge, the trial counsel argued in part:

"Ponder for a minute the impact upon the Coast Guard of the accused's offenses. * * * Particularly the law enforcement mission. We have to interface with the public in our law enforcement role. What may be the difficulties that we will encounter because the public knows that there are Coast Guardsmen within our midst who have been convicted of stealing marijuana? Will there be a lack of cooperation when it comes time to board a vessel, will boarding officers on the high seas meet with increased resistance because of loss of respect for the Coast Guard? Policemen who have convicted policemen within their midst. Consider the interface with other law enforcement agencies when those agencies have knowledge that people within the Coast Guard commit crimes that we are tasked to enforce. If people who do this aren't dealt with sternly, consider whether or not those other law enforcement agencies might not be reluctant to share information with us or to cooperate fully. Will other Coast Guardsmen feel respected by the community when that community knows that there are criminals in our midst? His crimes go far beyond the confines of the Coast Guard Cutter COURAGEOUS. They touch on matters far more reaching than even the immediate impact on the Coast Guard community. Can there by any doubt, gentlemen, that the importation of drugs into this country is a major problem facing our Nation? We must deal effectively and severely with this problem if we are to survive as a Nation. There is no place in the Coast Guard for Seaman Apprentice Ernst if the Coast Guard is going to deal effectively with the problem of drug importation. The Coast Guard must be beyond reproach, above suspicion, and unquestioned as a federal law enforcement agency. It is true that there is no single solution to this problem. One important contribution that can be made to an overall solution, is to deal severely with the problem wherever and whenever it is encountered, including within our own ranks. Particularly within our own ranks. The Coast Guard must deal with its own individuals as severely as those people we arrest. That we arrest for crimes very similar in nature to the ones that he now stands accused and convicted. * * * The government submits that

in order to accomplish those goals of punishment, a substantial period of confinement and a bad conduct discharge are necessary. Seaman Apprentice Ernst has drug (sic) the name of the Coast Guard through the mud. The impacts of his actions are serious and the punishment must be as serious as the crimes. Gentlemen, the message must be clear and it must be unequivocable (sic). The message must be driven home to the accused, all members of the Coast Guard, and the public. The public that we serve. Let there be no mistake. Those within the ranks of the Coast Guard who might violate the very laws that we are duty-bound to enforce will be dealt with severely, as severely as the civilians that we arrest, and those who provide bad service will be dealt with accordingly. Gentlemen, it is the government's position that the vehicle for this message must be a substantial period of confinement and a punitive discharge from the United States Coast Guard, a bad conduct discharge."

No evidence of record suggests that the appellant's involvement in the larceny of contraband marijuana might decrease the future cooperation of the public or other law enforcement agencies in boarding operations, cause boarding officers on the high seas to meet increased resistance or discourage other law enforcement agencies from sharing information with the Coast Guard. Nor is there any evidence that his actions would diminish the self esteem of other Coast Guardsmen or jeopardize the survival of our nation. Indeed, there is no evidence of record that "the public" or "other law enforcement agencies" were even aware of the appellant's wrongful conduct. Moreover, there is no evidence of record to guide the members in complying with the trial counsel's admonition that they must deal with Coast Guard members "as severely as the civilians that we arrest."

In *U.S. v. Cook,* 11 U.S.C.M.A. 99, 28 C.M.R. 323 (1959) the Court of Military Appeals affirmed the decision of a board of review which had reversed a conviction because of trial counsel's argument asking the members to consider the impact that an acquittal would have on the relationship of the American forces with the civilian community. Agreeing with the board of review's conclusion that the trial counsel's remarks had exceeded the bounds of fair comment and injected improper matter into the case, the Court said:

> "No useful purpose can be served by discussion of the many cases dealing with the effect of remarks by the prosecuting attorney. * * * Suffice it to say that an appeal to a court-martial to predicate its verdict upon the probable effect of its action on relations between the military and the civilian community 'pose[s] theories which are not supported by testimony and which operate as a one-way street against the accused.' *United States v. Mamaluy,* 10 U.S.C.M.A. 102, 27 C.M.R. 176 [1959]."

Subsequently, in *U.S. v. Boberg,* 17 U.S. C.M.A. 401, 38 C.M.R. 199 (1968) the Court of Military Appeals considered a claim that the accused was prejudiced as to the sentence in his case by trial counsel's argument that the appellant's acts "fail to favorably influence the local citizens"; that the victim's "death has caused the U.S. Government embarrassment"; and that here was an "example of the United States Mission being utterly compromised." Finding merit in the appellant's claim of prejudice despite trial defense counsel's failure to object, the Court quoted the above language from *U.S. v. Cook,* and added:

> "The absence of an objection, moreover, does not require a different result nor does it matter that the argument relates to sentence rather than findings. (Citations omitted).

> Basically, we see little distinction in the argument presented here and that made in *United States v. Cook, supra.* Both suffer from the fact that undue emphasis is placed upon United States military *vis-a-vis* foreign civilian relationships, in all their aspects.

> The factors that brought about reversal of the conviction in *Cook* are equally

present here. The consistencies with which these remarks permeate trial counsel's argument establishes the likelihood that the court-martial was improperly swayed. Under these circumstances, we are certain that the substantial rights of the accused on sentencing matters have been adversely affected." 38 C.M.R. at 204.

Similarly in appellant's case, trial counsel consistently emphasized harm to the relationship between the Coast Guard and the public, and between the Coast Guard and civilian law enforcement agencies as the basis for adjudging a severe sentence, particularly a bad conduct discharge and confinement. We have no doubt that the court-martial members were swayed by the trial counsel's improper remarks and that the substantial rights of the appellant on sentencing were adversely affected thereby.

■ Sentence was adjudged 19 February 1982 and the 72 page record of trial was authenticated by the military judge 17 March 1982. Thereafter, the legal officer's review was not submitted to the convening authority until 6 August 1982 and the convening authority did not act on the record until 8 September 1982. These latter events were 169 days and 202 days, respectively, from the date sentence was adjudged.

A chronology of events in the processing of the case is attached to the record of trial. An affidavit executed by the officer who served as legal officer for the review of the case has also been filed by the government. This latter document merely enumerates other functions that the affiant performed during the time that he was responsible for the preparation of the review of appellant's case. Nothing in either document explains why the legal officer's review was not prepared in a timely manner or even mentions why the district legal officer having primary responsibility for providing advice to the convening authority in accordance with Articles 61 and 65(b), UCMJ, did not perform that function prior to 21 July 1982 when an assistant legal officer was formally designated to act as legal officer for the review of the case. Thus, no justifiable basis for delay recognized by the Court of Military Appeals has been offered. See *United States v. Marshall,* 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973); *United States v. Stevenson,* 22 U.S.C.M.A. 454, 47 C.M.R. 495 (1973); *United States v. Larsen,* 23 U.S.C.M.A. 564, 50 C.M.R. 783 (1975).

Any prejudice the appellant may have suffered due to the unacceptable delay in the convening authority's action in his case will be cured by our reassessment of the sentence. See *United States v. McGinn,* 17 M.J. 592 (C.G.C.M.R.1983).

The remaining assignment of error is found to be without merit.

The findings of guilty are affirmed. Upon reassessment of the sentence in view of the errors discussed above, only so much of the sentence as provides for confinement at hard labor for four months, forfeiture of $300.00 per month for four months and reduction to pay grade E–1 is affirmed.

Judges BURGESS, HOLLAND, REINING and BRIDGMAN concur.