UNITED STATES, Appellee,

v.

James T. SHERMAN, Jr., Specialist,
U.S. Army, Appellant.

No. 65,305.

CM 8903927.

U.S. Court of Military Appeals.

Argued March 14, 1991.

Decided July 11, 1991.

For Appellant: *Captain Jay S. Eiche* (argued); *Captain Timothy P. Riley* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Captain Timothy J. Saviano* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Denise J. Arn* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

On December 15, 1989, appellant was tried by a general court-martial composed of officer and enlisted members at Karlsruhe, Federal Republic of Germany. Consistent with his pleas, he was found guilty of robbery and aggravated assault, in violation of Articles 122 and 128, Uniform Code of Military Justice, 10 USC §§ 922 and 928, respectively. He was sentenced to a dishonorable discharge, 5 years' confinement, total forfeitures, and reduction to Private E-1. The convening authority approved the sentence. On June 29, 1990, the Court of Military Review affirmed the findings and sentence in an unpublished opinion.

We granted review of the following issue:

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED IN HOLDING THAT APPELLANT WAIVED THE ERROR RESULTING FROM THE TRIAL COUNSEL'S IMPROPER COMMENTS ON THE ADVERSE IMPACT OF APPELLANT'S CRIME ON RELATIONS BETWEEN THE UNITED STATES MILITARY COMMUNITY AND THE LOCAL GERMAN COMMUNITY.

We hold that defense counsel's failure to object to the challenged comments during or after trial counsel's closing argument waived any error. RCM 1001(g), Manual for Courts-Martial, United States, 1984. In any event, any error in this regard was

clearly harmless. Art. 59(a), UCMJ, 10 USC § 859(a).

At trial, it was stipulated that on the evening of September 24, 1989, appellant took 530 Deutsche marks from a German taxi driver and stabbed him three times. It was also stipulated that this incident received considerable publicity in the local German newspapers. The stipulation of fact states in part:

> The attack upon and robbery of Herr Fugger, by virtue of the alarm he was able to set off, *drew a great deal of immediate attention to the scene of the crime.* The alarm radioed Herr Fugger's location and distress to a central dispatching office, and that office immediately notified the polizei and all other cab drivers in the area to respond and give assistance. The alarm was also rigged to set off a steady flashing of the cab's horn and lights. Herr Fugger's fellow cab drivers arrived before the polizei, and they found him slumped in the driver's seat bleeding heavily. Herr Fugger was still conscious but was not able to provide any immediate information about his attacker. The attack upon and robbery of Herr Fugger also drew broader, more public attention. *The crime was quickly reported in the Karlsruhe German newspaper giving details of the offense,* and soliciting any information citizens may possess since the identity of the attacker was unknown at first. *Additionally, posters with a description of the attacker* and pictures of the knives and clothing used by the attacker, which were recovered at the crime scene, *were produced and posted throughout Karlsruhe* in an effort to obtain information about the crime or attacker. When the accused was ultimately identified and apprehended, *the Karlsruhe German newspaper published a story reporting that the attacker of Herr Fugger had been caught and that the attacker was a U.S. Army member stationed in Kalsruhe.*

(Emphasis added.)

Defense counsel objected to this portion of the stipulation as suggesting that a severe sentence should be imposed to placate the Germany community. The military judge overruled this objection, asserting that it was relevant to show only the impact of the crime on the military community. The record reflects this exchange as follows:

> MJ: Okay. Defense, do you have objections to P.E. 1 for ID [the stipulation]?
>
> DC: Yes, Your Honor, we have a few objections on relevancy grounds to some specific provisions.
>
> MJ: And?
>
> DC: The first provision would be in paragraph four, and specifically referring to basically the last half of that paragraph. Everything after—in that paragraph—"Herr Fugger's fellow cab drivers arrived before the Polizei—"
>
> MJ: "The crime was quickly reported"? That part, where they're talking about the effect upon the local military community? Is that what you're complaining about?
>
> DC: Yes, Your Honor.
>
> MJ: And what's your grounds?
>
> DC: The—the grounds, Your Honor, is [sic] relevance.
>
> MJ: Okay, it's relevant to the effect upon the military community. The effect of the offense, right? At least that's what I can see that it has been put in here for.
>
> DC: Well, Your Honor, we would argue that it's put in there, actually, as aggravation only, for the purpose of getting across to the panel members, perhaps on sentencing, *that the German community is waiting to see what kind of a sentence is published in the newspapers concerning this offense.*
>
> MJ: *Okay, the court doesn't read it like that.* The court reads this as an indication of one of the effects of the offense. And the court believes that it's relevant to that point.

(Emphasis added.)

During *voir dire,* defense counsel asked the members:

Does the fact that the victim in this case is a German taxi driver prejudice you one way or the other regarding Specialist Sherman or your ability to arrive at a fair and just sentence in this case?

All of the members answered no. Nevertheless, during the closing arguments before sentencing, trial counsel argued:

> *You need to mend, or send a message, that the United States Army is concerned with the lives and property of the people of the Federal Republic of Germany.* You need to send a message to all other services in the Karlsruhe Military Community that it doesn't matter. You could be Superman. You could be the best thing since General Patton. But if you go out, and you stab somebody in cold blood, over and over again, and then leave him there, it doesn't matter if you have a Congressional Medal of Honor. You do not deserve to wear the United States Army—the uniform of the United States Army. You have conducted yourself dishonorably. You need to send that message to all soldiers that doesn't —that that is intolerable, and will not be tolerated. And will be severely punished. Those are important. *They're as important as punishing him.*

(Emphasis added.)

Defense counsel did not object to this argument, but he addressed it in his rebuttal:

> And the other point that he makes is, "Send a message." Send that message. The first point is send a message to the Germans. Because it's in the German papers. You'll see that again in the stipulation. It's in the German papers. The idea there is that you should send a message in the German papers that when a crime is committed against a German, the Americans send the soldier away for a longer period of time, I guess.
>
> But that's not the message. This is an American soldier. This is an American court, and he's being sentenced under American law. And although we understand and empathize with the victim being a German, we are under no obli-

gation in this courtroom to put on a show for anybody. The punishment should be the same for Specialist Sherman for doing this act as it would be anyone else if the victim had been a soldier, or if a German had done it to another German. Germans commit crimes, too, to other Germans.

---

The Government has conceded before this Court and before the Court of Military Review that trial counsel's sentencing argument asking that a message be sent to the German community was improper. *United States v. Boberg,* 17 USCMA 401, 38 CMR 199 (1968); *United States v. Cook,* 11 USCMA 99, 28 CMR 323 (1959). This concession was made despite the Discussion to RCM 1001(b)(4) which permits evidence in aggravation to show the social impact of a crime on "any ... entity which was the victim of" that crime. *See United States v. Needham,* 23 MJ 383 (CMA 1987). *Cf. United States v. Bartoletti,* 32 MJ 419, 421–422 (CMA 1991); *United States v. Gordon,* 31 MJ 30, 36 (CMA 1990). In any event, the question before us is whether the defense waived this error by not objecting at trial.

Appellant, citing *United States v. Boberg, supra,* contends that defense counsel's failure to object did not constitute waiver. In that case, this Court held that trial counsel's appeal to the members to consider the impact of the accused's crimes on relations between United States military personnel and the Vietnamese community was improper. *Id.* at 405–06, 38 CMR at 203–04. It also held that defense counsel's failure to object did not waive that issue. *Id.* at 406, 38 CMR at 204. *See United States v. Fisher,* 21 MJ 327 (CMA 1986).

The no-waiver holding of *United States v. Boberg, supra,* does not control the present case. First, unlike its predecessor (para. 75*b*(3)—renumbered *b*(4) in Change 5 (Apr.1982), Manual for Courts–Martial, United States, 1969 (Revised edition)), RCM 1001(b)(4) implies that evidence of community impact may be introduced in an appro-

priate case. *See* Discussion, RCM 1001(b)(4), 1984 Manual, *supra*. This Manual change makes it less likely that trial counsel's brief reference to the German community should be viewed as plain error. Second, the present Manual also provides that "[f]ailure to object to improper argument before the military judge begins to instruct the members on sentencing shall constitute waiver of the objection." RCM 1001(g).* Ample notice of the opportunity and responsibility to object was provided to defense counsel. *See United States v. Wilson*, 31 MJ 91 (CMA 1990); *United States v. Wood*, 18 USCMA 291, 40 CMR 3 (1969).

■ Finally, defense counsel in this case had previously objected to the part of the factual stipulation which he construed as suggesting consideration of the response of the German community to appellant's sentence. The military judge denied the motion on the basis that the stipulation did not suggest that this community was expecting a severe sentence. Defense counsel's election not to renew his objection on the reappearance of this rejected aggravation theory but rather to deal with it in his rebuttal argument was a reasonable tactical decision. *See United States v. Munoz*, 32 MJ 359 (CMA 1991). For these reasons, we hold that defense counsel's failure to object waived this error.

■ Even if trial defense counsel preserved this issue for review, it is doubtful that this legal error substantially affected appellant's sentence. Art. 59(a). The latter's crime of robbery additionally included the repeated and unprovoked stabbing of his cab-driver victim. The gratuitous brutality of this act was the true focus of trial

counsel's lengthy closing argument. The appeal to appeasement of the German community was a peripheral and minor portion of the prosecution's argument which defense counsel ably rebutted in his own closing argument. Finally, the members' negative responses to defense counsel's questioning on *voir dire* additionally assure us that the victim's German nationality was not a determinative factor in this case.

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

EVERETT, Senior Judge (concurring in part and dissenting in part):

I agree with the majority that trial counsel's improper argument probably did not influence the court members to punish Sherman any more harshly than they otherwise would have. However, I disagree with the majority's invocation of waiver under RCM 1001(g), Manual for Courts–Martial, United States, 1984 (*Argument*) and with their construction of RCM 1001(b)(4) (*Evidence in aggravation*).

### I

RCM 1001(g) does state, "Failure to object to improper argument before the military judge begins to instruct the members on sentencing shall constitute waiver of the objection." However, this waiver rule and the comparable rule set out in Mil.R.Evid. 103(a)(1), Manual, *supra*, were not intended to be applied mechanically and indiscriminately—with no regard to the surrounding circumstances. Thus, if an objection to a

---

* The quoted text is the last sentence of RCM 1001(g), which first appeared in the Manual for Courts–Martial, United States, 1984. *See* Drafters' Analysis, Manual, *supra* at A21–64 (Change 3). In full, RCM 1001(g) provides:

*Argument.* After introduction of matters relating to sentence under this rule, counsel for the prosecution and defense may argue for an appropriate sentence. Trial counsel may not in argument purport to speak for the convening authority or any higher authority, or refer to the views of such authorities or any policy directive relative to punishment or to any

punishment or quantum of punishment greater than that court-martial may adjudge. Trial counsel may, however, recommend a specific lawful sentence and may also refer to generally accepted sentencing philosophies, including rehabilitation of the accused, general deterrence, specific deterrence of misconduct by the accused, and social retribution. *Failure to object to improper argument before the military judge begins to instruct the members on sentencing shall constitute waiver of the objection.*

(Emphasis added.)

sentencing argument would reasonably have appeared to defense counsel to be a meaningless gesture in light of the military judge's prior rulings, failure to object should not be construed as waiver.

This seems to be exactly what happened in this case. Earlier in the trial the defense had objected unsuccessfully to those portions of a stipulation of fact which concerned the publicity given to Sherman's alleged crimes. The obvious purpose of the stipulation's language to which the defense objected was to suggest that Sherman should receive a heavier sentence because the German newspaper reports of his crimes were turning the local public against American servicemembers.

The military judge's ruling that the court members could consider the entire stipulation implies to me that, in later argument on sentence, the prosecutor would be free to refer to that portion of the stipulation to which the defense had unsuccessfully objected. Since the only logical purpose of such a reference would be to emphasize that Sherman's misconduct had created adverse German public opinion, I am convinced that the judge's evidentiary ruling—to which the defense counsel *did* object—indicated that it was proper for the prosecutor to argue in the manner he did. Under these circumstances, it was fruitless for the defense to reiterate the point raised previously in its objection.

Furthermore, Sherman should not be penalized because in his argument defense counsel attempted to counteract trial counsel's comments. I am unaware of any rule of military law whereunder an unsuccessful objection to evidence or argument is waived for appellate purposes because the objecting party subsequently sought to neutralize the impact of the challenged evidence or argument. Indeed, if a defense counsel does not try to counter the effect of evidence or argument to which an unsuccessful objection has been made, his failure may constitute ineffective assistance of counsel.

## II

In distinguishing this case from *United States v. Boberg*, 17 USCMA 401, 38 CMR 199 (1968), the majority suggests that the Discussion of RCM 1001(b)(4) "implies that evidence of community impact may be introduced." 32 MJ at 451. I disagree with this interpretation.

According to that Discussion:

Evidence in aggravation may include evidence of financial, social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused and evidence of significant adverse impact on the mission, discipline, or efficiency of the command directly and immediately resulting from the accused's offense.

While the majority opinion focuses on the phrase "any ... entity" as a basis for inferring that RMC 1001(b)(4) might include impact on the local foreign community, it ignores the limiting language—"who was the victim ... "—that follows this phrase.

Out of context, it might be argued that the local foreign community is a "victim" of a crime of violence committed against one of its members by an American servicemember. However, in the context of the entire sentence quoted above—where the rule refers separately to "the victim" of the offense and to "adverse impact on the ... command"—I do not believe that this is a fair interpretation of the Discussion language. Otherwise, the "command" also would be a "victim" to the extent that the crime had an "adverse impact on [its] mission, discipline, or efficiency;" so there would be no need to set out this consideration separately from those encompassed generally by the term "victim." Instead, I believe—and there is no expression in the Drafters' Analysis indicating a more expansive reading—that, in context, "any ... victim" was intended to mean—and should be read to mean—some person or organizational entity more directly affected by a crime than is the amorphous "community" as a whole.

I realize that it is important that service-members enjoy respect not only in the military community but also in the civilian society. Undoubtedly, maintaining this respect was a purpose Congress had in mind when it prohibited "all conduct of a nature to bring discredit upon the armed forces." Art. 134, Uniform Code of Military Justice, 10 USC § 934; *cf. United States v. Lockwood*, 15 MJ 1, 9–10 (CMA 1983).

Even so, I do not believe that public indignation over a crime is a proper gauge for the sentence to be imposed on a service-member. Indeed, due process is violated when an American servicemember receives a heavier sentence because of adverse publicity he has received—whether in foreign or American newspapers. Therefore, consistent with the rationale of *Boberg* and with the requirements of a fair trial for our servicemembers, I would not construe RCM 1001(b)(4) to allow either evidence or argument that alleged crimes had received adverse media coverage or had created public indignation.