**UNITED STATES, Appellee,**

v.

**Specialist Keith E. CHILDRESS, 229–25–1648, United States Army, Appellant.**

**ACMR 9000178.**

U.S. Army Court of Military Review.

31 July 1991.

For Appellant: Captain Brian D. Bailey, JAGC, Captain Edward T. Keable, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC, Captain Robert J. Walters, JAGC (on brief).

Before FOREMAN, HAESSIG and HAGAN, Appellate Military Judges.

### OPINION OF THE COURT

FOREMAN, Senior Judge:

A general court-martial convicted the appellant, pursuant to his pleas, of one specification of conspiracy and two specifications of robbery, in violation of Articles 81 and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 922 (1982). The court-martial acquitted the appellant of one additional specification of conspiracy and two additional specifications of robbery to which the appellant had pleaded not guilty. The court-martial imposed a sentence of dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, reduction to Private E1, and a fine of $500.00. The convening authority reduced the confinement to nine years and approved the remainder of the adjudged sentence. The appellant now asserts several errors in the sentencing portion of his trial.

### I. REQUEST FOR MISTRIAL

The appellant contends that the military judge erred by refusing to grant a mistrial after the court members acquitted the appellant of all charges and specifications before them, without knowing that the appellant had pleaded guilty to one specification of conspiracy and two specifications of robbery. At defense request, the court members were not informed of the appellant's pleas of guilty until they made findings on the contested offenses. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 913(a) [hereinafter R.C.M.]. After the members returned findings of not guilty to all contested specifications, the military judge instructed the court members as follows:

Lady and gentlemen, I'll now tell you that I have what may be considered, perpetrated a fraud on you. The accused was originally charged with more than what you saw today. He entered pleas of guilty to some of the charges and specifications against him. Under our law, when an accused pleads guilty to some offenses and not guilty to other offenses, the members are not allowed to know about the guilty pleas or other offenses until we get to sentencing because they are not relevant as to whether he's guilty or not guilty of what he has pled not guilty to. Of course it's his right, constitutionally, to plea [sic] not guilty and to force the government to attempt to prove his guilty, which the government was unable to do.

. . . .

You probably were thinking you were going to go home now. I apologize for that, but that's my fault and no one else's. And let me just say that it would be absolutely inappropriate for you to blame the accused for the deception, as I call it, that I have perpetrated upon you. When you retire to deliberate on the sentence in the case, you can consider only the offenses of which the accused has been found guilty. And of course,

you have acquitted [sic] of the ones that you considered and you certainly may not punish him for those offenses or punish him more severely for the other ones because, obviously, under our Constitution, a person is not required to plead guilty. Does anybody have any problem following that instruction?·

Having received a negative response to his question, the military judge permitted counsel to voir dire the members to determine whether they would be able to follow the military judge's instruction and impose punishment only for the offenses to which the appellant had pleaded guilty. A mistrial is a drastic remedy. It should be used "with great caution, under urgent circumstances, and for plain and obvious reasons." R.C.M. 915(a) discussion. While we disagree with the military judge's characterization of the procedure suggested in Rule for Courts–Martial 913(a) as "fraud" and "deception," we hold that the military judge did not abuse his discretion by refusing to grant a mistrial. *United States v. Jeanbaptiste*, 5 M.J. 374 (C.M.A.1978).

## II. EVIDENCE OF NONJUDICIAL PUNISHMENT

■ The appellant contends that he was denied a fair sentencing hearing "by assistant trial counsel's improper conduct of flagrantly making reference to clearly inadmissible material." The defense had called Specialist (SPC) Moran to testify regarding the appellant's good duty performance. On cross-examination, the assistant trial counsel asked, "Did you know about the Article 15s he received?"[1] The military judge correctly sustained a defense objection on the ground that the "Article 15s" were summarized records of proceedings under Article 15, Uniform Code of Military Justice. AR 27–10, paragraph 5–25a(4); R.C.M. 1001(b)(2); *United States v. Enlow*,

26 M.J. 940, 945 and n. 11 (A.C.M.R.1988). The military judge then instructed the court members, "You will ignore the questions. Summarized records of Article 15 are not admissible evidence."

While summarized records of proceedings under Article 15 are inadmissible, the conduct on which such proceedings were based may be a proper subject of cross-examination. A witness who testifies·regarding an accused's previous performance as a servicemember may be asked a "did you know" question based on the cross-examiner's good faith belief that acts of misconduct occurred. *United States v. White*, 33 M.J. 555, 557 (A.C.M.R.1991), and cases cited therein. We find no bad faith or ethical violation by the assistant trial counsel. Dep't of Army, Pam. 27–26, Army Rules of Professional Conduct for Lawyers, Rule 3.4 (December 1987). Rather, we find inartful cross-examination about acts of misconduct which were proper subjects of cross-examination.

## III. BAR TO REENLISTMENT

■ The appellant contends that the military judge erred by allowing the assistant trial counsel to cross-examine a defense witness about an alleged bar to reenlistment.[2] The trial defense counsel called Staff Sergeant (SSG) Calvin Johnson, the appellant's section chief, who testified that the appellant performed his military duties well until he started having personal problems. SSG Johnson testified that the appellant would not talk about his personal problems, but that the appellant's girlfriend told him (SSG Johnson) that the appellant was debating whether to reenlist. On cross-examination, the assistant trial counsel asked whether the girlfriend talked about appellant's bar to reenlistment. Over defense objection, SSG Johnson an-

---

**1.** Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815, authorizes commanders to impose punishment upon members of their commands for minor misconduct. Summarized proceedings are authorized when the commander determines that the appropriate punishment will not exceed oral reprimand or admonition, extra duties for 14 days, restriction to specified limits for 14 days, or any combination of the

above. Army Regulation 27–10, Legal Services: Military Justice, paragraph 3–16a(1) (22 Dec. 1989) [hereinafter AR 27–10].

**2.** Army Reg. 601–280, Total Army Retention Program, Chapter 8 (17 Sept. 1990), authorizes specified commanders to bar soldiers from reenlisting based on disciplinary records or other indicators of untrainability or unsuitability.

swered that she did not. SSG Johnson then testified that he didn't know about the bar to reenlistment "until [the appellant] got down to a few days close to his reenlistment date."

Later, in the presence of the court members, the assistant trial counsel asked permission to recall the appellant's battery commander, and the trial defense counsel objected on the ground that "the government is going to try to get into evidence a document which is not filed in accordance with regulations." In the presence of the court members the assistant trial counsel tendered a document to the military judge, who refused to admit it. The document, Prosecution Exhibit 6 for identification, is a sample bar to reenlistment form. It contains no identifying data pertaining to the appellant. Although the military judge rejected the document, he did not instruct the court members to disregard SSG Johnson's testimony, nor did he caution them not to speculate about the contents of Prosecution Exhibit 6. The net effect of the extended discourse about a bar to reenlistment and argument about an unidentified document was to give the court members the impression that the appellant had been barred from reenlisting but that they were not allowed to see the documentation.

It is not clear from the record whether: (1) the appellant was barred from reenlisting; (2) his commander attempted to impose a bar but was overruled by higher authority; or (3) a bar was imposed and then withdrawn. We cannot determine on the record before us whether the assistant trial counsel attempted to present fraudulent evidence, but we do find that the court members were left with fragmentary evidence of a bar to reenlistment with no limiting instructions. We hold that the military judge erred by failing to direct the court members to disregard all references to a bar to reenlistment.

## IV. EVIDENCE OF REMORSE

■ The appellant contends that the military judge erred by allowing the rebuttal testimony of Private E2 (PV2) Harmon on the issue of the appellant's remorse.

The appellant made an unsworn statement expressing remorse for his conduct. Over defense objection, PV2 Harmon, one of the victims, testified that during a field exercise a few days after the robbery, the appellant teased him and told him he intended to crack his spine. We hold that PV2 Harmon's testimony was proper rebuttal. R.C.M. 1001(c)(2)(C). We hold further that PV2 Harmon's testimony was independently admissible as "aggravating circumstances directly relating to or resulting from the offenses." R.C.M. 1001(b)(4). Accordingly, we hold that the military judge did not err by admitting PV2 Harmon's testimony.

## V. REHABILITATIVE POTENTIAL

■ The appellant also contends that he was prejudiced by First Sergeant (1SG) Crawford's testimony regarding lack of rehabilitative potential, based on the following colloquy:

Questions by the prosecution:

Q. First Sergeant, based on your knowledge of the accused, that you testified today, and your thoughts on the matter, do you have an opinion as to the accused's rehabilitative potential?

A. I sure do, sir.

Q. And what is that opinion?

A. Well my opinion is, hell no. He can't be rehabilitated in this United States Army, may be another army somewhere, but not this one.

MJ: Well, the objection is now sustained. First Sergeant, I'm sorry, but you are not allowed to testify as to rehabilitative potential in the Army, in general terms, in the broadest terms. Do you think that Specialist Childress can be rehabilitated to be a productive law abiding citizen?

WIT: No, sir.

Although the military judge sustained the defense objection, he did not instruct the court members to disregard the first sergeant's testimony, nor did he explain why he disallowed the first answer regarding rehabilitation in the Army but allowed the second regarding rehabilitation as a "productive law-abiding citizen." *See United States v. Ohrt*, 28 M.J. 301, 305

(C.M.A.1989) (testimony about rehabilitation in the military service usurps sentencing function of court-martial). Finally, the military judge asked 1SG Crawford to comment on the appellant's potential for rehabilitation as a citizen without establishing that 1SG Crawford had "sufficient information and knowledge about the [appellant] ... to give a 'rationally based' opinion." *Id.* at 304.

## VI. IMPROPER ARGUMENT

■ The appellant also contends that the assistant trial counsel improperly argued that the robbery adversely affected military-civilian relations. The appellant objects to the following comments by the assistant trial counsel:

> The accused is an American soldier. What does that cab driver know about American soldiers? That American cab driver [sic] knows the accused and the three soldiers that were there that night. We are here as representatives of the United States. We are the only Americans most of these people see. And what does this cab driver see? He sees a group of soldiers and the accused urinating in public and then getting back in the cab and forcibly taking his money, his livelihood. The money with which he would have probably paid his tuition at school. The accused has damaged, has beaten, has eaten away at what the Germans necessarily have to think about the Americans. Each of us represents, and the accused represents America to the Germans.

We agree that the sentencing argument in this case was improper. *United States v. Boberg,* 38 C.M.R. 199 (C.M.A.1968). Although Rule for Courts–Martial 1001(b)(4) is broader than the Manual for Courts–Martial 1951, United States, paragraph 75b(4), upon which *Boberg* was based, the concern expressed in *Boberg* remains valid. The assistant trial counsel's argument in this case "poses theories which are not supported by testimony and which operate as a one-way street against the accused." *United States v. Boberg,* 38 C.M.R. at 209 (citing *United States v. Mamaluy,* 27 C.M.R. 176, 181 (C.M.A.1959)). There was no evidence in this case that the appellant's crimes had an adverse impact on German–American relations. Thus, the argument was objectionable because it was not based on evidence.

Normally, the failure of the trial defense counsel to object to improper argument constitutes waiver. *United States v. Sherman,* 32 M.J. 449 (C.M.A.1991); *United States v. Poteet,* 50 C.M.R. 73 (C.M.A.1975). In this case we must evaluate the argument in the context of the other errors during the sentencing hearing.

## VII. CUMULATIVE ERROR

■ The appellant contends that the cumulative effect of the errors during the sentencing hearing deprived him of a fair hearing. We agree. The hearing began with the military judge properly informing the members that they had deliberated on findings without knowing about part of the prosecution case. Although proper, this was the first in a series of events in which the court members were treated as though they were engaged in legal "hide and seek" rather than an informed adjudication of a sentence. First, they were told that they had been deceived during the trial on the merits. Then they were instructed to ignore an improper prosecution reference to summarized Article 15s. They heard SSG Johnson testify about a bar to reenlistment and saw the prosecution proffer unidentified documents shortly thereafter, but were left to speculate about the existence of or basis for a bar to reenlistment. They heard 1SG Crawford improperly testify that the appellant had no rehabilitative potential in the Army but were given no limiting instruction to guide them in distinguishing between 1SG Crawford's inadmissible testimony about rehabilitation in the Army and his later responses to the military judge's questions regarding rehabilitation as a useful, law-abiding citizen. Finally, they heard the assistant trial counsel improperly argue regarding the impact on German–American relations.

We hold that this case falls under the doctrine of cumulative error, under which

"a number of errors, no one perhaps sufficient to merit reversal," in combination necessitate reversal. *United States v. Walters,* 16 C.M.R. 191, 209 (C.M.A.1954) (citing *United States v. Yerger,* 3 C.M.R. 22 (C.M.A.1952)). *See United States v. Hobbs,* 42 C.M.R. 870 (A.C.M.R.1970) (sentence set aside for cumulative error).

The findings of guilty are affirmed. The sentence is set aside. A rehearing on the sentence may be ordered by the same or a different convening authority.

Judge HAESSIG and Judge HAGAN concur.