UNITED STATES

v.

Sergeant James S. JOYNER, Jr., FR246–29–7395, United States Air Force.

ACM 29704.

U.S. Air Force Court of Military Review.

Sentence Adjudged 23 Oct. 1991.

Decided 13 April 1994.

Appellate Counsel for Appellant: Colonel Jeffrey R. Owens, Major Alice M. Kottmyer, and Major Marc A. Fox.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis, Lieutenant Colonel Mark C. Ramsey, Major Paul H. Blackwell, Jr., Major Jeffrey C. Lindquist, and Captain David C. Wesley.

EN BANC.

## OPINION OF THE COURT

YOUNG, Judge:

Appellant pled guilty to negligent homicide. Article 134, UCMJ, 10 U.S.C. § 934 (1988). The military judge sentenced him to a bad-conduct discharge and confinement for 1 year. Appellant assigns two errors: (1) the sentence is unduly severe; and (2) appellant was substantially prejudiced by the suggestion that the foreign situs of the offense was an aggravating factor. We disagree and affirm.

### I. Facts

On 16 May 1991, at approximately 0640, appellant was driving to work at Royal Air Force Lakenheath, United Kingdom, heading north on a two-lane highway. He was not late for work or in a hurry. The road was straight and nearly level, daylight had broken, but a fine rain was falling. Appellant was closely following another car as it maneuvered through traffic at speeds in excess of the 60–miles–per–hour limit. The cars overtook a Ford Escort van and quickly pulled in front of the van, right behind a truck. The driver of the other car accelerated and pulled out into the southbound lane to pass the truck. Appellant followed immediately. The other driver successfully passed the truck; appellant did not. Appellants car struck a vehicle in the southbound lane oper-

ated by Mr. Frederick Doe, a British subject. The headlights of Mr. Does vehicle were illuminated at the time of the accident. Mr. Doe died at the scene from injuries he suffered in the collision. The collision caused appellants car to swing back into the northbound lane, striking the van. None of those in the van were injured.

## II. Sentence Appropriateness

■ The maximum punishment for negligent homicide is a bad-conduct discharge, confinement for 1 year, total forfeitures, reduction to E–1, a fine, and other minor punishments. MCM, Part IV, ¶ 85e (1984). The military judge sentenced appellant to a bad-conduct discharge and 1 year of confinement, but strongly urged the convening authority to permit appellant to enter the return to duty program at Lowry Air Force Base. Successful completion of the return to duty program would have given appellant an opportunity to earn an honorable discharge. *See* Air Force Regulation 125–18, *Operation and Administration of Air Force Confinement and Corrections Programs and Facilities,* ¶ 13–8 (20 Sep 1989). The staff judge advocate concurred in the military judges recommendation, and the convening authority's action made it possible. Appellant notes in his *Grostefon*[1] submission that he voluntarily withdrew from the program.[2] Appellant asserts that his sentence is unduly severe.

■ This Court may affirm only such part or amount of the sentence as we find correct in law and fact and determine on the basis of the entire record should be approved. Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988). The purpose of Article 66(c) is to ensure "that justice is done and that the accused gets the punishment he deserves." *United States v. Healy,* 26 M.J. 394, 395 (C.M.A. 1988). Clemency is different. It involves bestowing mercy and is the prerogative of the convening authority and the secretary of the military service rather than the court of military review. *Id.* at 395–96. Of course, in conducting our review, we consider the entire record, including the clemency matters appellant presented to the convening authority. *United States v. Baker,* 29 M.J. 126 (C.M.A. 1989). Our duty is to determine whether appellants approved sentence is correct in law and fact based on an individualized consideration of the nature and seriousness of the offense and the character of the offender. *United States v. Snelling,* 14 M.J. 267 (C.M.A.1982).

By affirming a sentence, we do not necessarily mean that it is the sentence we would have adjudged had we been the sentencing authority. The numerous permutations and combinations of sentencing alternatives available to the sentencing authority are so broad that, normally, there will not be only one sentence that is appropriate for a particular appellant. Thus, it may be more fitting for this Court to find that a particular sentence "is not inappropriate," rather than "is appropriate." The test is whether, when viewed as a whole, the approved sentence is inappropriate for this appellant based on appellants character and the circumstances surrounding the offense.

At the time of the offense, appellant was 25 years old, was without dependents, and had been in the Air Force just short of 5 years. He had not been in trouble before and had performed his military duties on aircraft environmental systems in an outstanding manner. His father retired from the Air Force after serving more than 20 years. Appellants family and friends have rallied to his support and portray him as a bright, responsible, and caring individual. He pled guilty and expressed his remorse in open court.

On the other hand, appellants high-risk driving caused the death of Mr. Doe. By all accounts, the deceased was a kind, gentle, and loving man. He was 54 years old and had been in good health all of his life. He had served in the British Army as a military policeman and had worked as an electrical

---

1. *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982).

2. We considered appellants voluntary withdrawal from the return to duty program only as evidence that the convening authority had in fact taken action consistent with making the program available to him, not to show that he was unworthy of sentence relief.

engineer, a publican, and most recently as the manager of a garden center. He had two sons by his first wife who died after 20 years of marriage. He had been married to his second wife for 10 years. He was a quiet man who enjoyed the company of his wife and family and the solitude of a good book. He had been looking forward to the birth of his first grandchild who was born three weeks after his death. His death left a considerable void in his closely knit family, especially for his wife. She had emotional difficulty coping with the sudden loss of her husband; she had been on holiday in Spain with her daughters when Mr. Doe was killed and felt she had never had the opportunity to bid him a proper goodbye. She shut herself off from the support of her family and secluded herself in her home until forced to move out to make way for the new garden center manager.

The killing of another human being, even if caused by negligence, is a serious matter. Mr. Doe left a family devastated by his death. The veteran military judge crafted a sentence which permitted appellant to retain his rank and his pay; if his recommendation were followed, it would afford appellant an opportunity to earn an honorable discharge. The sentence as approved by the convening authority afforded appellant that opportunity. Under all the circumstances of this case, we are convinced that the sentence is not inappropriate.

### III. Foreign Situs of Offense as Aggravating Factor

■ During the providence inquiry, the military judge told appellant that, to plead guilty of negligent homicide under Article 134, he had to admit that his conduct was prejudicial to good order and discipline or service discrediting. In defining service discrediting, the military judge advised appellant that the conduct would have to harm the reputation of the service or lower it in public esteem. The military judge explained:

> That the public out there, consisting of the military community and the British population which surrounds the base here, will think less of military members if they believe we are all careless and go around

negligently killing people on their highways?

Appellant asserts "the obvious implication of the judges question was that the foreign situs of the offense and the perceptions of the local citizenry were aggravating factors," and that this likely influenced the military judges sentencing decision. He claims that prior court decisions have prohibited the practice of referencing the likely effect of the courts decision of surrounding foreign communities. *United States v. Boberg,* 17 U.S.C.M.A. 401, 38 C.M.R. 199, 204 (1968); *United States v. Cook,* 11 U.S.C.M.A. 99, 28 C.M.R. 323 (1959); *United States v. Mamaluy,* 10 U.S.C.M.A. 102, 27 C.M.R. 176, 181 (1959); *United States v. Spence,* 3 M.J. 831 (A.F.C.M.R.1977).

■ This assignment of error is without merit. The military judges question was correctly directed at establishing the providence of appellants plea to service discrediting conduct. A military judge is presumed to know the law and apply it correctly. *See United States v. Mays,* 33 M.J. 455, 459 (C.M.A. 1991); *United States v. Vangelisti,* 30 M.J. 234, 240 (C.M.A.1990); *United States v. Harper,* 22 M.J. 157, 164 (C.M.A.1986). Furthermore, the Court of Military Appeals has suggested that the rule appellant cites is no longer applicable. *United States v. Sherman,* 32 M.J. 449, 451 (C.M.A.1991).

AFFIRMED.

Chief Judge DIXON, Senior Judges SNYDER, RAICHLE, and HEIMBURG, and Judge GRUNICK concur.

Judge SCHREIER did not participate.

KEAN, Judge, joined by PEARSON, Judge (dissenting):

We view the sentence in this case as inappropriately severe, both legally and factually. We would modify the sentence to disapprove the bad-conduct discharge.

We agree with the majority's assertion that the killing of a human being, even if caused by negligence, is a serious matter. But, this begs the question. All negligent homicides involve the death of a human being; so this fact alone does not help distin-

guish this offense, in terms of seriousness, from other negligent homicides. Likewise, we agree with the majority that the victim was an asset to his family and the community. However, for a negligence based offense, we do not believe the status of the victim should significantly add to or detract from the seriousness of the offense. For example, if appellant had fortuitously struck and killed an escaping bank robber instead of a devoted family man, should we consider his conduct any less serious? "Legally," we think not. Consequently, we will explain our view of this Court's role in sentence appropriateness analysis and how we weigh this case on the scale.

The line between sentence appropriateness and clemency is deeply rooted in the jurisprudence of the Uniform Code of Military Justice, but the line between the two is not as clear as recent iterations of it—for example, *United States v. Healy*, 26 M.J. 394, 395 (C.M.A.1988)—would suggest. Almost forty years ago, the Court of Military Appeals held, in *United States v. Lanford*, 6 U.S.C.M.A. 371, 378, 20 C.M.R. 87, 94 (1955), that:

> The name by which the [Board of Review's] power [concerning sentence] is denominated is really unimportant. What is important is that, within limitation of its own authority, the [B]oard of Review can, in the interests of justice, substantially lessen the rigor of a legal sentence. The [B]oard of [R]eview, therefore, can be compassionate; it can be lenient; it can be forebearing. If one prefers to call the influence of those human qualities in the mitigation of a sentence the exercise of the judicial function of determining legal appropriateness, the description is proper.... On the other hand, if one wishes to call it clemency, that description also is proper. The title applied to the power

means little, so long as it is clearly understood that the law invests [B]oards of [R]eview with the power to treat "an accused with less rigor that their authority permits." [Citation omitted].[3]

We have not found a decision subsequent to *Lanford* which either elaborates upon, or reflects, its analysis of the relationship between sentence appropriateness and clemency. We engage in something of an oversimplification when we rely on the shorthand discussion of the issue in more recent decisions, such as *Healy*, for the proposition that our job is to approve a sentence the accused deserves, while others, exercising clemency, may give him less than he deserves. Neither we nor the trial court can determine with mathematical precision what punishment a particular accused "deserves." In our system, sentencing is an individualized process, taking into account the nature and seriousness of the offense and the character of the offender. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982); *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 106–107, 27 C.M.R. 176, 180–81 (1959). It is in short, an imprecise science. In any given case there will be a range, sometimes a wide range, of sentences which we reasonably could find appropriate. Within that range there is room for us to be "compassionate; lenient; forebearing." *Lanford.*[4]

In applying the sentencing principles set out in *Mamaluy* and *Snelling* a sentencing judge or court is conceptually locating the offense along an imaginary spectrum of offenses—from the most trivial to the gravest—and the offender along a spectrum of possible offenders—from those who "walk on water" to the most depraved and incorrigible. An appropriate sentence's location on the spectrum of available punishments—from no punishment to the maximum authorized—

---

**3.** This Court and its counterparts are the successor of the service Boards of Review. While much has been amended in the UCMJ since *Lanford*, the pertinent provision in Article 66(c) concerning this Court's power over sentences is essentially unchanged.

**4.** On the other side of the equation, it is unlikely that convening authorities and other officials ex-

ercising clemency powers very often intend to grant an undeserved windfall. They extend clemency because in their view the accused deserves it, due to demonstrated rehabilitation potential, good conduct after conviction, or some other sound reason.

Shakespeare tells us that mercy "droppeth like the gentle rains from heaven." That's great literature, and good theology, but it is not good law.

should bear at least a rough relationship to the location of the offense and the offender on their respective spectrums. This is not a formula; it does not, and should not, reduce a subjective application of judgment to a mechanical exercise. It is merely a loose analytical model for thinking about what sentencing judges do. We use the same model, consciously or not, in determining sentence appropriateness.[5]

In assessing the relative gravity of this particular negligent homicide, we note first that alcohol was not a factor. Had it been, the appellant most likely still would have been guilty of no more that negligent homicide. *See, e.g., United States v. Brown,* 22 M.J. 448 (C.M.A.1986); *United States v. Rios,* 24 M.J. 515 (A.F.C.M.R.1987), *pet. denied,* 26 M.J. 80 (1988) (additional aggravating factors required to raise drunk driving to culpable negligence). We note also that many reported negligent homicide cases deal with offenses which generally are viewed as a greater affront to society's norms than negligent operation of a motor vehicle. *See, e.g., United States v. Henderson,* 23 M.J. 77 (C.M.A.1986) (furnishing cocaine to the victim); *United States v. McGhee,* 33 M.J. 763 (A.C.M.R.1991), *aff'd,* 35 M.J. 194 (1991) (child neglect).

The evidence is this case shows that appellant was a generally careful driver. There is no indication of a pattern of neglect for the safety of others; only a lapse of judgment, which had tragic results. The evidence further shows that appellant had a good military record with no prior offenses, and was held in high esteem by his supervisors and his peers. In short, neither the nature and seriousness of the offense nor the character of the offender place this case near the aggravated end of the spectrum for sentencing purposes.

The maximum punishment authorized for negligent homicide is a bad-conduct discharge, confinement for one year, total forfeitures and reduction. The military judge sentenced appellant to the maximum authorized confinement as well as to a bad-conduct discharge. Whatever the intention of the military judge in imposing this sentence, it will result in the appellant carrying the life-long stigma of a punitive discharge. That stigma is not to be taken lightly. A punitive discharge is both a badge of dishonor and a practical disability. It was "designed to sever a service member from the military community and to a mark upon him which would make it difficult for him to reenter the civilian society and economy." "By design," a punitive discharge "impose[s] social and economic hardships." *United States v. Ohrt,* 28 M.J. 301, 306 (C.M.A.1989), quoting Lance, *A Criminal Punitive Discharge An Effective Punishment?,* 79 Mil.L.Rev. 1, 17 (1978). Significantly, at trial, the government specifically argued against imposing a bad-conduct discharge. Appellant's unit commander also recommended against a punitive discharge.

It may be, as the majority surmises, that the military judge in this case imposed a punitive discharge in order to make the appellant eligible for the return to duty program, in the hope or expectation that the convening authority would accept his recommendation (which he did) and that the appellant would successfully complete the program, obviating the punitive discharge (which he did not). If so, the judge imposed an inappropriately severe sentence with improper reliance on mitigating action by the convening or higher authority. *See* R.C.M. 1005(e)(3); *United States v. Balboa,* 33 M.J. 304 (C.M.A.1991). A punitive discharge in this case is either appropriate or not; if not, it is not rendered appropriate by the fact

---

Clemency in our system is more focused than that.

**5.** No doubt officials exercising clemency power frequently engage in a similar mental calculus, even if they don't articulate it. We are struck by the absence of any real difference between sentence appropriateness analysis as we employed, and the sort of analysis that probably goes into most clemency determinations. We are not trying to set a naught the distinction between sentence appropriateness and clemency—there are

real differences, not the least of which is that officials exercising clemency power have the authority to confer undeserved mercy, even if they seldom do it. R.C.M. 1107(d); *Cf. United States v. Wise,* 6 U.S.C.M.A. 472, 20 C.M.R. 188, 192–93 (1955). We merely point out that when officials exercising clemency authority approach their task with their usual realism, and when this Court exercises its Article 66(c) authority in a "compassionate; lenient; forebearing" manner, sentence appropriateness and clemency analysis begin to converge.

that the appellant may be given the opportunity to "work it off" later.

After careful consideration of the entire record, we are not convinced that a punitive discharge, with its life-long stigmatizing effect, is an appropriate response to this act of simple negligence. We would affirm only the confinement component of the sentence which appellant has already served.